72   735
s74   855

SALLIE BLACKBOURN *v.* B. A. TUCKER ET AL.

1. WILLS.   *Charitable devise.*   *Mortmain.*   *Const.* 1890, §§ 269, 270.

Under § 269, constitution 1890, making void devises of lands, or money from the sale thereof, in favor of religious or ecclesiastical corporations, or any person or body politic, in trust for charitable uses, and, under § 270, making void bequests of money or personal property in favor of such corporations, but omitting prohibition of bequests to them in trust for charitable uses, a will giving lands and personal property to an educational association in trust for erecting and maintaining a college, is void as to the realty, but valid as to the personalty.

2. SAME.   *Const.* 1890, §§ 269, 270, *applicable to wills previously made.*

The prohibition of charitable devises and bequests contained in §§ 269, 270, constitution 1890, apply to wills made before the constitution was adopted, where the testator did not die until afterwards.

FROM the chancery court of Tate county.

HON. B. T. KIMBROUGH, Chancellor.

The case is stated in the opinion.

*W. J. East,* for appellant.

The validity of the dispositions in the will must depend upon the law as it was when the will took effect by the death of the testator.   8 Paige, 304; 4 Hill, 138; Schouler on Wills, 10; 1 Redfield on Wills, 359; 3 Pom. Eq. Jur., § 1162; 1 Jarman on Wills, 290; 39 Ohio St., 596.   Appellant's contention is that, under §§ 269, 270, constitution 1890, no person or body politic can become a trustee of a bounty for the purpose of being given or devoted to charitable uses.   This is clearly true of § 270. The two sections should be construed together as being in *pari materia.*   23 Am. & Eng. Enc. L., 332.   And, thus construed, they make invalid the gift both of the realty and personalty.

*Mayes & Harris*, on the same side.

The sections in question were incorporated in 1890, for the first time, into our organic law. This action by the constitutional convention declared a settled and inflexible public policy, and the adjudications of the court upon these statutes must be in furtherance of that policy—for the suppression of the mischief and the advancement of the remedy.

These sections apply, notwithstanding the will was executed before the constitution was adopted. To so apply them is not giving them a retrospective operation. Both sections relate to devises "contained in any last will and testament, or codicil."

The dispositions here involved were contained in a will at the time the constitution was adopted, and the language of the sections literally and exactly apply. A strict and hair-splitting analysis of the sections would rather exclude application to wills thereafter executed, because there were no express words in the statutes looking to the future. However, we do not believe such to be the meaning of the constitution. Its true construction is, that from the first day of November, 1890, any will which should become effective by the death of the testator, and which should contain a bequest of the character announced, should be null and void. The contrary construction is based upon certain authorities drawn from England and from the state of Pennsylvania. Without discussing these in detail, it will be seen that they were based upon a question of the application of the English statute of 9 George II., ch. 36. The language of that statute is this: That "from and after the twenty-fourth day of June, 1736, no manors, etc., shall be given, granted, aliened, etc., or . . in anyways conveyed or settled to or upon any person," etc. The English courts, in their adjudications, were avowedly hostile to the statute, and held that, because of its language, it was not applicable to wills already executed. The provision in our statute is, not that no bequests shall be made, but that no bequests "contained in," etc., shall be valid. The English decisions proceed on the idea that a de-

vise is an appointment of particular lands to a particular dev-
isee.　Cowper's Rep., 90.　The Pennsylvania decisions relied
on by appellees, on close examination, would seem to be au-
thority for appellant.　See *Price* v. *Taylor*, 28 Pa., 95; *Cri-
ley* v. *Chamberlain*, 50 *Ib.*, 106; *Miller* v. *Porter*, 53 *Ib.*, 292;
57 *Ib.*, 209; 74 *Ib.*, 69; 100 *Ib.*, 607; 106 *Ib.*, 635.　The
general rule undoubtedly is, that a will does not take effect,
nor are any rights acquired under it, until the death of the tes-
tator.　37 N. H., 295; 8 Paige, 295; 4 Hill, 138; 12 Metcalfe,
169; *Ib.*, 262; 72 Ind., 235; 3 McCord (S. C.), 471; 4 *Ib.*,
39; 26 Ala., 535; 3 Jones L. (N. C.), 77.

　　That a school is a charity is well settled.　*Vidal* v. *Garrard*,
2 How. (U. S.), 127; 24 *Ib.*, 465; 107 U. S., 163; 94 Mo.,
459; 53 Penn., 292.

　　The proposition that, under § 269 of the constitution, the will
is void as to the lands, needs no argument.　It is contended,
however, that § 270 does not apply, because the Senatobia Ed-
ucational Association is not a religious or ecclesiastical corpo-
ration.　We admit that it is not such, but we contend that
while the view of this subject contended for is plausible, it
is, in fact, unsound, and, looking to the spirit and purpose
of the provisions, and construing the two sections together,
the result is in fact that § 270 does what the preceding sec-
tion does, with some minor differences, that is to say, it
prohibits religious devises, and also prohibits charitable de-
vises.　A liberal interpretation must be placed upon each sec-
tion in order to further, not to restrict, the intent of the con-
stitution.　It may be urged that the use of the word "either,"
in the fifth line of § 270, excludes such a reading as we con-
tend for.　We recognize the plausibility of this position, but
we say that the word "either" is referable, for its subsequent,
to the "or" which immediately follows it in the same clause,
not the "or" in the second or succeeding clause; in other
words, that the reading is properly "to any religious denom-
ination for either its own use or (its own) benefit," etc.　Sim-

ply to transpose the two contiguous words "either" and
"for," clears up the matter and makes it vastly more effective
and sensible.

*N. A. Taylor*, for appellees.

The English mortmain statutes were never a part of the com-
mon law of this country.   24 How. (U. S.), 499; 1 Jarman
on Wills, 242; 2 Merivale, 143.   The briefs of associate coun-
sel demonstrate that this statute has been uniformly construed
as not applying to wills executed before the death of the tes-
tator.   I submit that our constitution does not prohibit gifts of
the character here involved.   It seems, then, on well-settled
principles, that the interpretation of the statutes does not ad-
mit of such construction.   If so, we have, without the same
necessity therefor, a more extreme and radical statute of mort-
main than any of its English prototypes, for certainly there is
not now the same necessity based on public policy for so rad-
ical a prohibition.   Even in the midst of the famous contest
by the Catholic church striving for religious intrenchment
on English soil, the parliament, in the very birth of the stat-
ute, in the time of George II., made an exception in favor
of education, and it was extended in favor of education after-
wards.   1 Jarman on Wills, 221, 241; 6 Jacob's Fisher's Di-
gest, 9300.   The proper rule of construction requires that
the legislative provision on this subject should be considered
in the light of the history of the law, and the necessity for
its enactment.   3 Am. & Eng. Enc. L., 366; 1 Smed. & M.,
100.   Under the first section, it is obvious that it is religious
or ecclesiastical control that kills the devise, whether it be for
religious or charitable purposes.   The words "religious or ec-
clesiastical" modify the other person or body in the section dev-
ises to which are forbidden, and are to be understood as pre-
ceding the words "person or body politic."   This harmonizes
with the next section, which omits the words "to any person
or body politic," but which prohibits devises to religious or

ecclesiastical corporations or associations, either for religious, ecclesiastical, or charitable purposes.   Another construction nearly the same, and the same in effect, can be given both sections—namely, that the charitable uses or purposes forbidden in both sections are only those of a religious or *quasi* religious character.

It is surely not against the policy of our state for such an educational association to exist; otherwise, why was it chartered by the state?   There certainly can be no objection to the method of the acquisition in this case by will.   The statutes were designed to prohibit the making of devises in one's last hours, induced by religious influences.   In this case, there was no religious influence, and it is shown that the will was executed years before the testator's death.

*Ira D. Oglesby*, on the same side.

The English statute of mortmain has never been regarded as in force, in the absence of legislation, in any of the states except Pennsylvania.   As that state considered the English statute in force, its decisions are entitled to more weight than those of other courts, where the points in issue are only incidentally involved.   It is fair to presume that our constitutional convention, in adopting § 269, had in view the construction that had been placed upon the English statute, especially as to whether it should be construed as prospective or retroactive.   Constitutional provisions, like statutory enactments, are usually construed to operate prospectively only.   139 U. S., 643; Sedg. Con. Laws & Stat., 188; Cooley on Con. Lim., 76; Sutherland on Stat. Con., 473; 10 Smed. & M., 601; 39 Miss., 363; 24 *Ib.*, 379; 40 *Ib.*, 252; 57 Pa., 212; 82 Am. Dec., 696; 41 *Ib.*, 274.   It is a settled general rule, except where changed by statute, that, as to devises of land, a will speaks as of the time of its execution, instead of the time of the death of the testator.   This distinction is emphasized in Schouler on Wills, § 11; 16 How. (U. S.), 275; 15 Conn., 275; 9 Ired., 288;

40 Pa., 217; 5 W. & S., 198. The decisions holding that no rights are acquired under a will until the death of the testator will be found almost invariably to be based upon statutes similar to that of act 1 Vic., 26, which expressly so provides, except in cases where a contrary intention appears by the will. The case of *Carroll* v. *Carroll*, 16 How., 275, cites with approval 9 Ired., 288, which holds that a will is not affected by laws passed subsequently to its execution. A critical examination of that case and others like it will show that the courts hold that the statutes discussed show on their face a legislative intent that they shall have a retroactive effect. Our statutes do not, upon their face, indicate any such intent. The courts will not so construe a statute, when its words do not force them, so as to repeal a devise or bequest which would be valid had the testator died immediately after making it. 26 Ala., 535.

All that is meant by the fact that a will is ambulatory until the death of the testator is, that the testator retains the power of ratifying or revoking it. 67 Pa., 212. The execution of the will certainly gives an inchoate right to the devisee. These are subject to future legislation, and may be extinguished; but an intent to do this must be clearly expressed. Sutherland on Stat. Con., 481.

Under the English mortmain statute it has been uniformly held that it did not apply to sales executed before its passage. 2 Mod. Rep., 210; 2 Atkyns, 46; 1 Eden, 483; 1 Dickens, 414; 1 Ambler, 550; 1 Vesey, Sr., 225. I have not found a single case to the contrary. The English statutes enacted in this country are presumed to be adopted with the settled construction given them in the English courts. 2 Marshall, 388; *Marqueze* v. *Caldwell*, 48 Miss., 23; 110 U. S., 628; 2 Pet., 1, 18; Smith Com. on Stat. & Con., 634; Sedgwick on Con. Stat., 363. The same rule applies to constitutional provisions. *Dailey* v. *Swope*, 47 Miss., 367. Authorities giving the statute the same construction are not wanting in this country. *Battle* v. *Speight*, 9 Ired., 288; 26 Ala., 535; 40 Ga., 562; 42 Fed.

Rep., 869; 40 Pa., 220; 5 N. Y., 309; 15 Conn., 290; 11 Barb., 332; 8 Cranch, 66; 26 Ala., 535; 58 Vt., 106; *Tucker* v. *Whitehead*, 59 Miss., 594; L. R., 8 Ch. App. Cas., 192.

If I am mistaken in the contention that the will is not retroactive, and that the constitution does not apply to this will, I still submit that there is nothing in the bequests which contravene public policy. There is no reason why gifts for an educational purpose should not be upheld. It is the settled policy in our state to maintain schools and promote education. The two sections, taken together, only intend to prohibit bequests directly to religious or eccelsiastical associations, or to be by them appropriated to charitable uses. Where educational associations are wholly disconnected from religious or eccelsiastical corporations, the reason of the prohibition does not apply. These provisions have never been passed upon by our court, except in two cases. *Tatum* v. *McClelland*, 50 Miss., 1, was a case of a gift unquestionably for religious purposes. The other case, *Bostick* v. *Elliott*, ms. op., book L, 296, is a case exactly like the one at bar, and the bequest was upheld under the code of 1857, which contains provisions identical with those of the present constitution.

*G. D. Shands*, on the same side.

No legislation not intended to affect previously executed wills will be held to do so. In addition to the cases cited by associate counsel, see 74 Pa., 68; 100 *Ib.*, 607; 106 *Ib.*, 635; 7 House of Lords Cases, 728; 126 N. Y., 466.

The history of the statute leaves no doubt that its intent was to prevent devises and bequests to religious concerns or bodies, or to persons or bodies politic for religious purposes. True, the letter of the first section seems to be a little broader, but the well-settled rule of law is that the statutes must be construed together according to their intent, even though to do so will override the letter. 1 Smed. & M., 70; 10 *Ib.*, 527; 26 Miss., 567; 27 *Ib.*, 17; 45 *Ib.*, 540; 46 *Ib.*, 157; 47 *Ib.*,

235, 570; 56 *Ib.*, 710; 23 Am. & Eng. Enc. L., 321, and
note 3.  The foregoing authorities were incorporated by the
learned chancellor in his opinion, to which we invite attention.

It was evidently the intent to include in the mortmain laws a
prohibition against devises to religious bodies, either for them-
selves or for charitable uses, but the record does not show any
religious tendency at all in the Senatobia Educational Associa-
tion.  Where there is no ecclesiastical taint about the devise,
it is not obnoxious to the law.  The mortmain acts are meant
to save men from the force of religious solicitations addressed
to them under the sanction of religion, in the near view of
death.  17 P. F. Smith (Pa.), 138.  Not only is the devisee
not a religious association, but the will in this case was made
more than six years before the death of the testator.  Surely,
the framers of the constitution of 1890 could not foresee any
harm to the people of this state in the upbuilding of colleges
by the aid of devises when these were to be controlled by non-
religious agencies.  There surely has not been so steady a
stream of benefactions to the endowment of schools in this
state as to cause any just alarm.  Our state encourages institu-
tions of learning by exempting them from taxation.

Argued orally by *E. Mayes*, for appellant, and *N. A. Taylor*,
for appellees.

COOPER, C. J., delivered the opinion of the court.

By his will, made on the seventeeth day of August, 1887, A.
L. Blackbourn, after some small bequests to his wife, the appel-
lant, devised and bequeathed the remainder of his estate, real
and personal, to the Senatobia Educational Association, to be
by said association applied ''in maintaining and keeping in a
prosperous condition that institution of learning owned by said
association, and known as the Blackbourn College for Girls, in
Senatobia, Miss., or in both maintaining said college and erect-
ing such additional and suitable buildings to said college as their

judgment may dictate, having always in view the best interest. of said institution." Blackbourn died on the first day of November, A.D. 1893, and his will was presented for probate by Tucker, his executor, on the fourth day of said month. The appellant exhibited her bill in the chancery court of Tate county, in which county the testator had resided and in which the will was probated, challenging the validity of the devise of the land and the bequest of the personal estate to the Senatobia Educational Association, on the ground that said dispositions of his estate by the testator were rendered void by §§ 269, 270 of the constitution of the state. These sections are as follows :

"SEC. 269. Every devise or bequest of lands, tenements or hereditaments, or any interest therein, of freehold or less than freehold, either present or future, vested or contingent, or of any money directed to be raised by the sale thereof, contained in any last will and testament, or codicil or other testamentary writing, in favor of any religious or ecclesiastical corporation, sole or aggregate, or any religious or ecclesiastical society, or to any religious denomination or association of persons, or to any person or body politic, in trust, either express or implied, secret or resulting, either for the use and benefit of such religious corporation, society, denomination or association, or for the purpose of being given or appropriated to charitable uses or purposes, shall be null and void, and the heir at law shall take the same property so devised or bequeathed, as though no testamentary disposition had been made.

"SEC. 270. Every legacy, gift or bequest of money or personal property, or of any interest, benefit or use therein, either direct, implied or otherwise, contained in any last will and testament, or codicil, in favor of any religious or ecclesiastical corporation, sole or aggregate, or any religious or ecclesiastical society, or to any religious denomination or association, either for its own use or benefit, or for the purpose of being given or appropriated to charitable uses, shall be null and void,

and the distributee shall take the same as though no such testamentary disposition had been made.''

The constitution became operative on November 1, 1890. The chancellor was of opinion that, since the will was executed before the adoption of the constitution, it was not controlled by the sections of the constitution above set out, although the testator died after they became of force, and, entertaining this view, sustained a demurrer to and dismissed the bill. This ruling of the chancellor presents the question principally argued by counsel, but, as will hereafter appear, the question of the construction of the constitutional provisions, if applicable in the present controversy, is also presented. Counsel for appellee, in an exceedingly able and learned brief, contend that to apply the constitution to wills executed before its adoption, is to give it a retroactive operation, to annul a valid and lawful disposition of property, and, while they concede the competency of such legislation, either by statute or by constitutional provision, they contend that the presumption is against such having been the intention of the framers of the constitution, there being in the instrument no provision that it should have a retroactive operation. It is urged by them that our constitutional provisions are, in effect and purpose, the same as the English statute of mortmain. 9 George II., ch. 36. And since, they say, the English statute had uniformly been held by the courts of England, and by those of Pennsylvania, in which state alone it is in force, to apply only to wills executed after its passage, it should be assumed that the framers of the constitution intended, in adopting our provisions against mortmain, to adopt also the construction which had been given to its prototype. It would unnecessarily protract this opinion to enter into a full discussion of the authorities cited by counsel for the respective parties, nor is it necessary to affirm that, in the construction of the act of George II., the English courts were prolonging the controversy that had so long existed between parliament and the ecclesiastics, who formerly presided in chan-

cery.   The language of the English act, that "no lands or
tenements, or money to be laid out therein, shall be given or
charged," etc., is quite different from that of our provision,
which condemns the dispositions forbidden when "contained in
any last will or testament, or codicil or other testamentary
writing."   At the time of the adoption of the English statute,
after-acquired lands could not pass by devise, which was con-
sidered in the nature of a conveyance or appointment of an es-
tate then owned, or to which the devisor was beneficially entitled.
1 Jarman on Wills, ch. 4.  What influence, if any, this fact had
upon the English courts, and.whether the fact that with us a dif-
ferent statutory rule prevails would lead to a different construc-
tions of the same statute, need not be considered.  The provisions
are not the same.  The rule of construction invoked by counsel
for appellees, that when a statute of another state which has re-
ceived judicial construction is adopted, the presumption is that
its construction is also accepted, is met by the opposing rule
that a change in the words of a prior statute is an indication that
the lawmakers intended a different, and not the same, construc-
tion to be thereafter adopted.   *Rich* v. *Keyser*, 54 Pa. St., 86;
Endlich on Inter. of Stat., § 382.   But these rules of construc-
tion are not of very great value in determining the question
involved, because the very nature and character of the consti-
tutional provisions impel us to the conclusion that they apply to
all devises becoming operative by the death of the devisor after
their adoption.   An examination of the cases cited by counsel
for the respective parties will show them to have been decided
under statutes of three distinct classes:   First, statutes limiting
or denying testamentary power, as the statutes of mortmain;
second, statutes affording a rule of construction for discovering
the intent of the testator; third, statutes regulating the exe-
cution and publication of wills.   When the purpose is of dis-
covering whether the legislative will was that the statute should
operate what is sometimes not accurately called retroactively,
it is manifest that the question is largely controlled by the very

nature of the act.   We are now dealing with a question falling within the first of the classes of cases as just noted.   The statute of 1 Vict., ch. 26, may be taken as illustrating the second class.   As a rule, before this statute, when a testator referred to an actually existing state of things, his language was deemed to be referred to the date of the will, and not to his death. Jarman on Wills, vol. 1, p. 288.   The act of parliament provided " that every will shall be construed, with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." Now, if the rule of construction provided by this statute, which had for its purpose the discovery of the intent of the testator, had been applied to wills theretofore executed, the probability is, that the testator would have been made by the law to mean one thing, when, in truth, he meant another.   This would be testing a past transaction by a future rule, and, since the whole purpose of the act was to supply a rule of construction to discover the intention of the testator as disclosed by his words, it is evident that to have applied the statute to a will made at a time when the same words under the then existing law meant directly the opposite, would have resulted in giving a different meaning to his words than that meant by the testator.   But, even as applied to such statutes, diametrically opposite rules have been adopted.   *Carroll* v. *Carroll*, 16 How. ( U. S.), 275; *Mulloch* v. *Souder*, 5 Watts & S., 198 ; *Brewster* v. *McCall*, 15 Conn., 274; *Battle* v. *Speight*, 9 Ired. ( N. C.), 288.   *Contra:* *Cushing* v. *Aylwin*, 12 Metc., 109 ; *Pray* v. *Waterston*, *Ib.*, 264; *Brimmer* v. *Sohier*, 1 Cush. (Mass.), 118.

There is conflict in the authorities as to whether statutes regulating the execution and publication of wills are applicable to wills executed and published before their enactment, as will be seen by reference to the cases cited by counsel for appellant. But the rule undoubtedly is, that a statute will be construed to operate on past transactions—especially where no vested rights

are affected—if it is necessary thus to apply it in order to effectuate the scheme and purpose of the legislature. An act declared that a person " convicted of felony " should forever be disqualified from selling spirits by retail. It was held that one convicted before the passage of the act was disqualified, as the object of the law was to protect the public from having beerhouses kept by men of bad character. *Hitchcock* v. *Way*, 6 A. & E., 947; *Ex parte Guttierez*, 45 Cal., 430; Endlich on Inter. of Stat., 284.

The constitutional provisions have no relation to the intention of the testator, nor do they regulate the manner in which he may make and publish his will. The question is, not what was his will, but it is, what is the will of the people of the state? Manifestly, the purpose of the constitution is to prevent one who will not be charitable at his own expense from being so at the expense of his heir at law. One may yet "sell all that he hath, and give to the poor," but he may not keep his grip on his estate until death relaxes his grasp, and then, at the expense of wife and child, devote it to religious uses. Why should one who, before the adoption of the constitution had executed a will over which his dominion remained absolute, stand in any different relation to his family or the public than one who had not? The prohibition is against the thing to be done, and not against the processes by which it is done. The limitation is upon testamentary power, and, if it is unjust or retroactive to apply its terms to one who had made a will, why does not the same objection lie in favor of all the people who, at the time of the adoption of the constitution, had the testamentary capacity to then make wills? The provisions certainly, in one sense, take away a pre-existing power, but it was one existing as much in every citizen then having testamentary capacity as in Blackbourn, who had executed a paper which in no sense bound him, or conferred any right upon the persons named therein as legatees. We can see no reason why the prohibition should not operate against Blackbourn's right to retain his estate dur-

ing his life, and then disinherit his heirs by devoting it to religious and charitable purposes, which would not also restrain it as against all others who, before the adoption of the constitution, had the power so to do. We are of opinion that the will is subject to the operation of the constitution.

The remaining question is, to what extent is the will annulled by the constitution? It will be noted that, while in § 269 the prohibition is against devises to religious or ecclesiastical corporations, denominations, societies or associations of persons, or to any person or body politic, in trust, either express or implied, secret or resulting, either for the use and benefit of such religious corporation, society, denomination or association, or for the purpose of being given or appropriated to charitable uses or purposes, § 270 contains no prohibition against bequests of personal property to "any person or body politic, in trust for the purpose of its being applied to charitable uses or purposes." Section 269 deals with devises of lands, or bequests of money to be raised by the sale thereof ; § 270 with bequests of money or personal property generally. We are at a loss to conjecture why the subjects of lands, or money to be raised by the sale thereof, have been dealt with in one section of the constitution, and devises or bequests thereof to "any person or body politic, for the purpose of being given or appropriated to charitable uses or purposes," has been prohibited, while bequests of money or personalty generally is separately controlled by § 270, in which such bequests are not prohibited. That a distinction between the two classes of property was intended is made manifest by the fact that they are separately provided for in distinct sections, and by the use of carefully selected words, which are not susceptible of receiving the same construction.

In § 269 devises of land, or of money to be raised by the sale thereof, to persons or bodies politic, to be applied to charitable uses, are prohibited; in § 270 bequests of money or personal property to such persons or bodies politic for charitable

uses are not forbidden.   We have sought in vain for some principle upon which the two sections might be brought into harmonious reading by construction, but we are constrained to recognize the fact that the subjects are controlled by divergent words too clear to admit of the same construction.   We are, therefore, of opinion that, while under § 269 of the constitution the devise of the lands by the testator is annulled, the bequest of the personal estate is valid, because not prohibited by § 270.

Section 269 of the constitution was article 55, and § 270 was article 56, of ch. 35 of the code of 1857.   These articles were dropped from the code of 1880, and were replaced as the above sections of the constitution of 1890.   In *Bostic* v. *Elliott*, ms. op., relied on by counsel for appellant, the bequest was, we think, upheld under article 56 (§ 270 of the present constitution).   The figures, 55, as written in the opinion, should have been 56. Unless this was the article under which the bequest was upheld, the decision is erroneous.

*The decree is reversed, the demurrer overruled and the cause remanded.*

WHITFIELD, J., *dubitatur* as to the bequest of personalty.