GREELY *et al. v.* HOUSTON *et al.*\*

(Division A.   Oct. 24, 1927.   Suggestion of Error Overruled Dec.
5, 1927.)

[114 So. 740.  No. 26359.]

1. WILLS.  *Devise or bequest is not effective until acceptance.*
   A devise or bequest does not become effective until accepted by
   devisee or legatee, who has right to accept or decline it as he
   may desire, and, in case of refusal to accept devise or legacy, the
   property will be dealt with as if devise or legacy had not been
   made.

2. WILLS.  *Refusal of devisee or legatee to accept devise or bequest,
   followed by limitation over on death, is equivalent to his death.*
   ·When a devise or bequest is followed by limitation over on death
   of devisee or legatee, refusal of devisee or legatee to accept it is
   equivalent to his death, and limitation over then becomes ef-
   fective, unless it is manifest from provisions of will that testator
   intended otherwise.

3. WILLS.  *Renunciation of will granting life estate by cestuis que
   trustent terminated life estate, and limitations over became at
   once effective.*
   Where will creating life estate with limitation over was renounced
   by *cestuis que trustent,* the life estate of trustee was terminated,
   and limitations over on the termination of the trust became at
   once effective.

4. CHARITIES.  *Religious societies.  Requests to religious and charit-
   able societies held invalid as to land situated within state (Con-
   stitution 1890, sections 269, 270; Hemingway's Code 1927, sec-
   tions 3578, 3579).*
   Under Constitution 1890, sections 269, 270, Code 1906, sections
   5090, 5091 (Hemingway's Code 1927, sections 3578, 3579), be-
   quests over to religious and charitable institutions on death
   of life tenants *held* invalid as to land situated within state.

5. CHARITIES.  *Religious societies.  Direction in will to sell land and
   invest money in personal property held ineffective as to bequest
   over to religious and charitable institutions (Constitution 1890,
   section 269).*

Under Constitution 1890, section 269, rendering void, not only a devise of land for religious and charitable institutions, but also any direction of will that land be sold and money received there for be applied to such uses, a direction in will that land situated in state be sold and money invested in personal property is ineffective in so far as bequests to religious and charitable institutions are concerned.

6. CHARITIES. *Devise to charitable institution for carrying on charitable work held invalid, though not accompanied by definite instructions (Constitution 1890, section 269).*
Where will devising land or its proceeds to religious or charitable institution intended that money should be expended in carrying out charitable work, in that property was directed to be turned over to do some permanent good, devise was invalid under Constitution 1890, section 269, though not accompanied with definite instructions to appropriate it to charitable uses.

7. CHARITIES. *Devise of land to charitable institution held void (Constitution 1890, sections 269, 270).*
Devise of land to charitable institution *held* void under Constitution 1890, section 269, notwithstanding section 270 relative to bequests of personal property to religious and charitable institutions, it being impossible to construe the two sections harmoniously.

8. CHARITIES. *Bequests of personal property to nonreligious charitable institution are valid (Constitution 1890, section 270).*
Under Constitution 1890, section 270, bequests of personal property to nonreligious charitable institutions are valid.

---

*Corpus Juris-Cyc. References: Wills, 40Cyc, p. 1054, n. 87; p. 1055, n. 88; p. 1075, n. 58; p. 1892, n. 49, 50; p. 1899, n. 5; p. 1954, n. 65. As to power of religious society to take and hold property, see 23 R. C. L. 443, et seq.

APPEAL from chancery court of Washington county.
HON. J. L. WILLIAMS, Chancellor.
Suit by George T. Houston and others against Andrew T. Greely and others. Decree overruling demurrers of various defendants, and defendants appeal. Affirmed and remanded, with leave to answer.
Item III of the will of Frank B. Houston is as follows:

"Third. All the rest, residue and remainder of my property of every kind, real, personal and mixed, wherever situated I give, devise and bequeath unto Andrew T. Greeley, Walter A. Graff, and W. Herbert Stewart as trustees, in trust nevertheless for the following uses and purposes: To take, receive, hold and maintain the same, invest and reinvest the same disposing of any part or parts thereof as may be found expedient or advisable for the purpose of providing for the payment of legacies herein and for reinvestment from time to time and to pay over the income therefrom at convenient period during each year in equal parts to my three sisters hereinbefore named, Emma Stanton, Mary Turner, Eva Hardesty, and my brother, J. Sherman Houston, one-quarter of said income to each of said sisters and brother during the natural life of each respectively.

"My property at present has been largely liquidated and consists principally of cash, stocks, bonds and securities in part and the remainder in timber, timber land and real estate located in the state of Mississippi. It is my desire that my executors and trustees herein named shall, as soon as it can be done advantageously, sell and dispose of all the said real estate turning the same into cash or income producing securities to the end that as soon as reasonably feasible my estate shall consist entirely, or nearly so, of income producing property.

"So that my executors or trustees shall pay over one quarter of the income from my estate at any and all times after my decease as hereinbefore provided to each of my three sisters and my brother, J. Sherman Houston, during the natural life of each respectively. At the death of each one of said three sisters and brother, J. Sherman Houston, respectively, the one-quarter of my trust estate as it shall then exist theretofore referable to such deceased sister or brother, shall be delivered to and become the property of the charitable organizations as hereinafter named, so that at the death of each of the said four beneficiaries respectively, the one-quarter interest

herein provided for such beneficiary so dying shall go, be delivered to and become the property of the following charities in succession as their absolute property; that is, at the death of the first one of said beneficiaries one-quarter of said trust estate, principal and then accrued and unpaid income belonging thereto shall go to the Chicago Branch of the Salvation Army. At the next death of one of said beneficiaries, one-quarter of said trust estate shall go to and be taken by the three churches Presbyterian, Baptist, and Methodist Churches of Centreville, Iowa, one-third thereof to each. At the death of the third of said beneficiaries in point of time, one-quarter of said trust estate, principal and then accrued and unpaid income shall go to and be taken by the Home for Destitute Crippled Children, now located on Park avenue in Chicago, Illinois; and at the death of the fourth and last of said beneficiaries in point of time the remainder one quarter of said estate shall go to and be taken by the Old People's Home of the City of Chicago, now located on Vincennes avenue near 47th street; and the trust hereby created for the benefit of my said four beneficiaries shall terminate as to each one quarter upon the death of each one of said beneficiaries and the property incident thereto be turned over to the charity succeeding hereunder absolutely in its own right, and upon the death of the last one of said four beneficiaries and the turning over of the last one-quarter of said trust property to the succeeding charity as beneficiary, the entire trust shall terminate.''

*Percy & Percy, Shands, Elmore & Causey, Clark M. Cavenee, Walter Bachrach, William G. Lodwick, Burry, Johnstone & Peters, Judah, Willard, Wolf & Reichmann* and *W. B. Hays,* for appellants.

*Sivley, Evans & McCadden,* for appellees.

Reporter's Note: Exhaustive briefs were filed in this cause by learned counsel on both sides but are too voluminous to report.

Argued orally by *Clark M. Cavenee, A. W. Shands, Walter Bachrach, William Burry, Jr.,* and *Leroy Percy,* for appellant, and *C. L. Sivley* and *M. G. Evans,* for appellee.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a decree overruling separate demurrers of the various appellants to a bill of complaint in which they are defendants, and is for the purpose of settling the principles of the case.

The case set forth in the bill is substantially as follows: Frank B. Houston died in Cook county, Ill., while a citizen thereof, seized and possessed of a large amount of property, a part of which is situated in this state. He left a will by which, after making certain specific bequests and devises, he disposed of the residue of his property as set forth in item 3 thereof, which the reporter will set out in full. After providing for the appointment of the appellants, Greely, Graff, and Stewart, as his executors and trustees therein, the will continues as follows:

"I name these trustees in the confidence that they will be able to see that the property I leave is invested to provide a fair income for my sisters and brother, J. S. Houston, during their lives, and that the principal may be turned over intact to the ultimate beneficiaries to do some ultimate good."

The property in this state consists of land, a part of which is in cultivation, and certain personal property thereon. Houston sold a part of this land prior to his death to the Bellgrade Lumber Company, a Tennessee corporation, by a written contract signed both by himself and the Bellgrade Lumber Company, by which it was agreed that deeds to the land from Houston to the lumber company, each deed conveying a separate parcel, should be and they were deposited with the Commercial Trust & Savings Bank of Chicago, Ill., to be delivered by

the bank to the lumber company on the payment to it of the money which the lumber company agreed to pay for the land. Payments have been and are being made by the Bellgrade Lumber Company to the Commercial Trust & Savings Bank under this contract.

Houston left surviving him as his sole heirs at law the brother and three sisters provided for in item 3 of his will, another brother, George T. Houston, and three children of a deceased sister, by whom the bill of complaint was filed.

The three churches and the Chicago branch of the Salvation Army are alleged to be religious institutions engaged in religious work. The Home for Destitute Crippled Children and the Old People's Home are alleged to be institutions engaged in work of a charitable nature.

The brother and three sisters provided for in the will, by proper allegations in the bill of complaint, expressly decline to accept the provision therein made for them, in so far as it affects the property of the testator in this state, and renounce the will to that extent. The bequests over to the religious and charitable institutions on the death of the beneficiaries of the trust are alleged to be void, because, in violation of sections 269 and 270 of the Constitution, and of sections 5090 and 5091, Code of 1906 (sections 3578 and 3579, Hemingway's Code 1927), which are rescripts thereof.

The prayer of the bill, in substance, is that these bequests over be held void, and that the trustees be directed to deliver the property in Mississippi attempted to be disposed of by the will to the complainants as heirs at law of Frank B. Houston, deceased.

The two main contentions of the appellants, defendants in the court below, are: (1) No action can be maintained by the testator's heirs at law to determine the validity of the devises and bequests to the religious and charitable institutions until the termination of the precedent trust by the death of the beneficiaries thereof; and (2) the remainders over to the religious and charitable

institutions after the termination of the precedent trust are valid.

A devise or bequest does not become effective until accepted by the devisee or legatee, who has the right to accept or decline it as he may desire; and, when a devisee or legatee refuses to accept a devise or legacy, the property devised or bequeathed to him will be dealt with as if the devise or legacy had not been made. When a devise or bequest is followed by a limitation over on the death of the devisee or legatee, the refusal of the devisee or legatee to accept it is the equivalent of his death, and the limitation over becomes then effective, unless it is manifest from the provisions of the will that the testator intended otherwise. *Rose* v. *Rose,* 126 Miss. 114, 88 So. 513. That the bequest here is in the form of a benefit under a trust is of no consequence, for the will contains no provision, and the trustees are charged with no duty which remotely indicates that the testator intended the trust to remain in effect in the event the *cestuis que trustent* declined to accept the benefit thereof. The testator's manifest purpose in postponing the enjoyment of the property by the religious and charitable institutions until the death of the beneficiaries of the trust was that they (the beneficiaries of the trust) might receive the income thereof until their death. The renunciation of the will by the *cestuis que trustent,* in so far as it affects the property dealt with therein that is situated in this state, terminated the life estate of the trustees in that property, and the limitations over on the termination of the trust became at once effective.

Coming now to the validity *vel non* of the remainders over on the death of the beneficiaries of the precedent trust, and dealing first with the devise of the land, it is said by counsel for the appellants that the rule that a devise of land is governed by the law of the state wherein it is situated should not be applied here, for, to test the validity of Houston's will by section 269 of the Constitution, would be to give it an extraterritorial effect.

In support of this contention they say that the purpose of that section of the Constitution is not to limit testamentary power, but to prevent the accumulation of property in the hands of religious institutions, and that the institutions to which this property was devised and bequeathed are domiciled, not in Mississippi, but in Illinois and Iowa, in which states such institutions may hold property devised or bequeathed to them.

One of the purposes sought to be accomplished by section 270 may be to prevent the accumulation of property in the hands of religious institutions; but it is not the only one, for, as expressly set forth in *Blackbourn* v. *Tucker,* 72 Miss. 735, 17 So. 737:

"The purpose of the Constitution is to prevent one who will not be charitable at his own expense from being so at the expense of his heir at law. . . . The limitation is upon testamentary power."

The will directs the trustees to sell the testators real property and invest the proceeds in personal property, bcause of which the appellants say that, under the doctrine of equitable conversion, the will must be dealt with as if it disposed of personal property only, and therefore its validity must be determined by the laws of Illinois. Section 269 of the Constitution renders void, not only a devise of land for religious and charitable uses, but also any direction in a will that land be sold and the money received therefor be applied to such uses. The direction in Houston's will that his land be sold and the money received therefor invested in personal property is therefore ineffective in so far as the religious and charitable institutions are concerned, and, consequently, the ground on which they base their claim for the application of the doctrine of equitable conversion disappears.

On behalf of the nonreligious charitable institutions, it is said that section 269 of the Constitution does not prohibit a devise of land or its proceeds direct to a nonreligious charitable institution, unless accompanied with instructions to appropriate it to charitable uses, and that

the devises here are not accompanied with any instructions at all; consequently, the constitutional prohibition is not violated thereby. The devises to these nonreligious charitable institutions are not wholly unaccompanied by instructions as to their use, for the testator expressly stated in one paragraph of his will that the estate devised in trust for the benefit of his brother and sisters should, after their death, "be turned over, intact, to the ultimate beneficiaries to do some permanent good." But, without this, it is clear from the whole will that the testator meant for the money which these nonreligious charitable institutions should receive under his will should be expended by them in carrying on the charitable work in which they are engaged. He could have had no other purpose in leaving the money to these institutions, and his purpose to appropriate this money to charitable uses will, in all probability, be as effectually accomplished as if he had created a trust therefor by the use of the most approved and technical words. Compare *Maas* v. *Sisters of Mercy,* 135 Miss. 505, 99 So. 468.

Section 269 of the Constitution prohibits a devise of land direct to a religious institution or in trust for the use and benefit of such an institution "or for the purpose of being given or appropriated to charitable uses or purposes." Section 270 prohibits a bequest of personal property to a religious institution "either for its own use or benefit, or for the purpose of being given or appropriated to charitable uses," but, unlike section 269, prohibits a bequest in trust for charitable uses only when the trustee or the one to make the appropriation to charitable uses is a religious institution. Why a distinction between real and personal property should have been made in these sections of the Constitution is not apparent (*Blackbourn* v. *Tucker,* 72 Miss. 735, 17 So. 737); and counsel for the nonreligious charitable institutions say that it is manifest that no distinction was, in fact, intended. They say that the purpose of each of

these sections is the same, and is to prevent devises and bequests of property to religious institutions for any purpose whatever; and that section 269 should be so construed, thereby bringing it into harmony with section 270.. This contention was negatived in *Blackbourn v. Tucker,* 72 Miss. 735, 17 So. 737, wherein a devise of land to a college was held to violate section 269, the court saying it had "sought in vain for some principle upon which the two sections might be brought into harmonious reading by construction."

The appellants contend that the bequests of the personal property are governed: (1) By the laws of Illinois, the state of the testator's domicile, under which they are valid; and, if not, but are governed by the laws of this state, then (2) under section 270 of the Constitution, the bequests of the personal property to the non-religious charitable institutions are valid. The second of these contentions is, of course, true.; but it will not be necessary for us to decide the first, for, should we hold that the bequests of the personal property are governed by the laws of Illinois, we must nevertheless affirm the overruling by the court below of the demurrers to the bill of complaint, for the appellees would still be entitled to recover the land. For the same reason it will not be necessary for us to determine whether the Bellgrade Lumber Company land was converted in equity into personalty by the contract for the sale thereof executed by the testator prior to his death; and, in addition, whether this land was converted into personalty should be decided in the light of the facts alleged in the answer of the Bellgrade Lumber Company, which cannot now be done.

Affirmed and remanded, with leave for the appellants to answer the bill of complaint within thirty days after the filing of the mandate in the court below.

*Affirmed and remanded.*