374 So.2d 776 (1979)
Mary Ann Barbieri SMITH and Laree Elizabeth Smith Maynor
v.
BANK OF CLARKSDALE, Executor of Estate of Tony Morris, Deceased, et al.
No. 51097.
Supreme Court of Mississippi.
August 15, 1979.
Rehearing Denied September 26, 1979.
*777 Lomax B. Lamb, Jr., Caldwell & Lewis, Larry O. Lewis, Marks, for appellants.
Holcomb, Dunbar, Connell, Merkel, Tollison & Khayat, Charles M. Merkel, Clarksdale, for appellees.
Before SMITH, SUGG and COFER, JJ.
COFER, Justice, for the Court:
The testatrix, Mrs. Angeline A. Morris, departed this life about March 13, 1968, leaving a will with these pertinent provisions:
ARTICLE II
I give, devise and bequeath unto my beloved husband, Tony Morris, an amount equal to the maximum marital deduction allowable under federal estate tax laws, with respect to my estate. The determination of this amount shall be prior to any deduction for state, inheritance, or succession taxes. This bequest shall be paid by my Executor from the personal property of my estate, after provision is first made by my Executor from such personal property for the payment of all my debts and expenses of administration. Should the remainder of the personal property assets of my estate be insufficient so as to not equal the maximum marital deduction allowable under the federal estate tax laws, then the balance thereof shall be taken and discharged from real property owned by me at my death, with a choice of such real property to be made by my beloved husband.
* * * * * *
ARTICLE VI
I hereby name, nominate, appoint and constitute my beloved husband Tony Morris as Executor of this my Last Will and Testament; and it is my wish and will and I do hereby order and direct that my said Executor shall not be required to give bond or other security as such in this or any other jurisdiction wherein proceedings may be required to be instituted in connection with this, my Last Will and Testament. Nor shall my said Executor be required to prepare and state an appraisal or account of my estate except insofar as the same may be required by the taxing authorities of the United States of America or the State of Mississippi.
The record shows no action on the surviving husband's part, personally or as executor of her estate, as to the bequest next above to him, or as to the sufficiency or insufficiency of the personalty, or the selection of realty that might be necessary fully to satisfy the bequest to him. Instead, on January 21, 1970, he, as executor, filed "Petition for Discharge of Executor," wherein he recites:
1. That the said Executor has properly administered said estate, has paid all probated claims and other debts, including taxes due thereon; however, no federal and state taxes were due although estate tax returns were filed; and
2. Petitioner would further show that the will of the said Angeline A. Morris, Deceased, waived bond, inventory, appraisal or accounting to any court; and
3. Petitioner would show that he was the sole beneficiary of said estate either in fee or as life tenant, and that there was no distribution to be made to the only other beneficiary named therein, Mary Ann Barbieri Smith, who is the remainderman after the life estate of said petitioner.
That in view of the above, petitioner believes that final accounting having been waived in said will and said petitioner being the only beneficiary entitled to a distribution of said estate that the petitioner should be discharged and the estate closed.
Wherefore, the above premises considered, petitioner prays that final accounting be waived as provided in said will, and that he be discharged as Executor *778 and the estate closed upon the payment of court costs accrued herein.
Thereafter, "the formerly duly appointed, qualified and acting executor of the estate of Angeline A. Morris, deceased," filed "Petition to Reopen Estate and to make Election of Real Estate Comprising Devise in Fee Simple."
He recited, in paragraphs (4) and (5), that the maximum amount allowable as marital deduction was $20,033.86, against which were $2,800 of life insurance and $996.94 in personalty, leaving to be made up of realty the amount of $17,036.92.
He further alleged:
6. That no election of real estate was made by the petitioner of record prior to the discharge of your petitioner in the above captioned cause and that the estate of Angeline A. Morris was closed without said election.
7. That this petition is filed herein asking for authority to reopen the estate so that an election of record may be made of that portion of the deceased's real estate which is to comprise her devise to your petitioner in fee simple, and the interests of all the legatees in deceased's real estate may be given precision.
He then prayed that the estate be reopened and that he be authorized to elect specifically four pieces or combinations of realty, which he described in the prayer, which he considered made up of the aggregate deficiency of the $17,036.92, in the bequest.
He prayed that the election be recorded in the land records and "that upon compliance with the order of this Court thereasto, he be again discharged."
On the same day (September 1, 1972), Chancellor Denton entered a "Decree Reopening Estate of Angeline A. Morris Allowing Election of Real Estate Comprising Devise in Fee Simple and Discharging Executor," wherein he tracked the petition in allegations, finding:
6. That no election of real estate was made by the petitioner of record prior to the discharge of your petitioner in the above captioned cause and that the estate was closed without said election.
7. Although article VI of the will of said testatrix dictated that if the personalty was insufficient to constitute the marital half that the executor and devisee and legatee make such election and he has now done so in his petition and consistent with the estate tax return.
The decree then ordered reopening of the estate, and setting aside as the balance of the marital deduction the parcels as had been prayed, and
It is further ordered, adjudged, and decreed that Executor-Petitioner's paying of the costs of court, he shall again stand discharged.
It is to be noted that the reopening, setting aside, and closing of the estate was done all on the same day and with no notice to the interested parties, and these things were done more than two years after the earlier decree closing the estate and discharging the executor.
There is a portion of an estate tax return approximating Morris' calculations in his September 2, 1972, petition (Schedule M), and Exhibit 10, State Tax Return, and another report, apparently complete, but without date showing a marital deduction of $71,906.18 (Exhibit F to cross bill and See Schedule O, Recapitulation R. 72).
On June 21, 1977, the remainderman Mary Ann Barbieri Smith and children filed a petition "to declare null and void the decree reopening estate allowing election of real estate and for other relief." There was an amendment thereto, adding parties.
Defendants answered, setting up affirmative defense of the latter "amended" estate tax form showing marital deduction greatly in excess of that shown in his petition of September 1, 1972, and that the personalty and realty were insufficient to make the marital deduction and all testatrix' estate should be set aside to Morris' estate, he having died before this time, and, by cross bill, prayed removal of petitioner's claims as clouds on Morris' estate's title.
*779 Chancellor Ross rendered opinion that the 1970 decree "was incomplete and inadequate and failed to give effect to the will of Angeline A. Morris. Certainly this 1970 decree cannot be considered as a decree of distribution," and that the "September 1972 decree was clearly voidable for want of proper notice to petitioner and her children."
His decree, June 21, 1978, entitled "Amended Interlocutory Decree" found as above, and also (as contained in the opinion):
2. Upon a careful reading of the January 21, 1970, Petition for Discharge of the Executor and the Decree thereon, the Court has concluded that at the time Tony Morris executed the said petition he must have assumed that upon election, when and in whatever form made, he would have taken all of the assets of the Estate of Angeline A. Morris, including the probate personalty and all the realty in satisfaction of his legacy.
3. Under the circumstances, the petition filed January 1, 1970, cannot in equity be construed as a renunciation on the part of Tony Morris of his rights under the legacy. He ordered:
c. All parties interested in the Estate of Angeline A. Morris are presently before the Court, and it is fitting and proper that the administration of said Estate now be concluded with a proper Decree of distribution being entered therein.
The decree granted to petitioners Smith and her children an interlocutory appeal without supersedeas and taxed the costs against them.
It is here on interlocutory appeal, and on assignments of error as follows:
1. The court erred in ruling that the January 21, 1970, decree entered in the Estate of Angeline A. Morris discharging the executor was incomplete and inadequate, failed to give effect to the Will of Angeline A. Morris, and cannot be considered as a decree of distribution.
2. The court erred in ruling that the administration of the Estate of Angeline A. Morris now be concluded with a proper Decree of Distribution being entered therein.
Somewhere along the way, between September 1, 1972, and the proceedings beginning in June, 1977, Morris (1) adopted as his daughter his wife's niece, Petitioner Mrs. Mary Ann Barbieri Smith, (2) remarried, and (3) departed this life testate.
It is considered that, the decree of 1970, being by authority of testatrix' waiver of anything more formal, was sufficient to close the estate and discharge the executor. Nothing further was formally required of him by way of accounting or of the Court, in addition to what was done.
After then, there was no estate to be set aside. It had gone, a life estate to Morris, the remainder to petitioners. Perhaps Morris did not know any better, but the record shows he was represented by a very capable solicitor.
In Greely v. Houston, 148 Miss. 799, 114 So. 740 (1927), this Court said:
A devise or bequest does not become effective until accepted by the devisee or legatee, who has the right to accept or decline as he may desire; and, when a devisee or legatee refuse[d] to accept a devise or legacy, the property devised or bequeathed to him will be dealt with as if the devise or legacy had not been made. (148 Miss. at 805, 114 So. at 742).
80 Am.Jur.2d Wills, Sections 1601-1603, says:
§ 1601. Time for acceptance or renunciation; effect of delay.
A beneficiary cannot accept an apparent devise or bequest to him under a will before his rights or interest under the devise or bequest are specifically ascertained, where his specific rights or interest thereunder are uncertain. However, acceptance of a testamentary gift has been held to have been indicated by acts or circumstances occurring during the life of the testator, although in at least one case a contrary conclusion was reached, and a devisee or legatee of an estate or remainder interest, after an estate of another, may renounce the devise *780 or bequest before the termination of the prior estate.
Generally speaking, the right to renounce a testamentary gift must be exercised within a reasonable time after the testator's death or after a reasonable opportunity is afforded the legatee to do so, with the result that if no action is taken by the beneficiary within such period, he will be considered, or, as it is sometimes put, conclusively presumed, to have accepted the gift. The question of what constitutes a reasonable time depends upon the facts and circumstances of the individual case, divergent results having been reached with respect thereto.
With respect to testamentary gifts burdened with a charge or condition, the view has sometimes been taken that failure of the donee to accept within a reasonable time precludes his subsequently attempting to assert his right to take the gift.
§ 1602. What constitutes acceptance; manner and form.
It is well established that the acceptance of a devise or bequest need not be express but may be shown by the acts or conduct of the beneficiary. In a number of cases, for example, beneficiaries under wills have been deemed to have accepted their gifts in view of their assertion of title over, or acts of possession of, the property devised or bequeathed, although the view has been taken that such circumstances may not be conclusive as to the establishment of an acceptance, raising, instead, a jury question with respect thereto.
Where the manner or form of accepting a devise or bequest is provided in the will or in a statute, such provision is decisive of the question as to how the devise or bequest should be accepted.
§ 1603. By executor-beneficiary.
Where the executor of a will is also named therein as a legatee or devisee, specific acts or conduct undertaken by him which would ordinarily indicate an acceptance of a gift may have been done in his capacity as executor rather than his capacity as a beneficiary and be accordingly held not to show an acceptance. In particular cases divergent results have been reached with respect to this situation, the view being taken in some that the particular executor-beneficiary involved was shown to have accepted the gift in his favor, and in others that he was not. An executor's acceptance of or assent to a devise or bequest to himself may not be implied, where the devise or bequest is needed for the payment of the testator's debts, or the testator has left no assets.
34 C.J.S. Executors and Administrators § 486, page 371, speaks of notoriety of the acceptance as being necessary.
As a general rule, where a thing is devised or bequeathed to an executor, he will hold it as an executor until he makes his election to take it as devisee or legatee. It has been held that no formal act is necessary to vest title to the legacy or distributive share in him as an individual, any act on his part showing an intention to retain assets in payment being sufficient. It has been held, however, that some notorious, authoritative, and unequivocal act is necessary to transfer title, and that a mere mental determination or intention to transfer title to himself as legatee is insufficient. The personal representative cannot, without an order of court, or a settlement or agreement with his colegatees or codistributees, retain his legacy or share from the assets of the estate to the exclusion of, or in preference to, other legatees, distributees, or creditors, as by applying it to debts due by him to the estate. (Emphasis added).
Here, however, by the plain language of Morris' 1972 petition, he had never set aside realty of any amount to himself, and procured reopening of the estate and a decree setting aside what he considered to be sufficient for the supplement.
In Powell v. Buchanan, Admx., 245 Miss. 4, 147 So.2d 110 (1962), where a personal injury claim remained and the statute had not run on suit thereon, closing of the *781 estate was described by this Court as taking place with unfinished business pending. Morris, is, by his own 1970 petition for discharge, estopped to maintain a 1972 right to reopen the estate, for he thereby contradicted his own petition for discharge, which presupposed, as far as he was concerned, that all the business of the estate that he wanted done had been done, and therefore, waived his further claim against the estate.
As well stated in the briefs, his election not to select was an election.
The estate might be reopened within two years of its closing, under, and for the purposes contained in, Mississippi Code Annotated, Section 91-7-309 (1972), but this remedy is not open to Morris.
It is said in Shepherd v. Townsend, 249 Miss. 383, 162 So.2d 878 (1964), that:
A decree directing final distribution of the personal estate made in conformity with law is conclusive as to every matter involved and constitutes a bar to further proceedings concerning the same matter. (Citing authorities) (249 Miss. at 391, 162 So.2d at 880, 881).
By Morris' failure to exercise his right to the supplemental realty and suffering the estate to be closed without such setting aside, he waived his right thereto; he was thereby and therefore precluded from reopening the estate as he undertook to do in 1972, and that both assignments of error are well taken.
In this record we have three different situations, inconsistent and incompatible.
(1) A complete waiver of any real estate in supplement of the personalty in making up the bequest to Morris, as evidenced by Morris' closing of the estate in 1970;
(2) A petition and decree setting aside an amount of realty to bring the whole legacy to the approximate $20,000 amount; and
(3) A cross bill by Morris' executor which, if granted by the court, would consume the entire realty of the estate to satisfy the legacy.
We conclude that the assignments of error are well taken, and the cause should be reversed and rendered. We note as plain error the assessment of the costs against appellants and reverse this action, also.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P.J.J., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.