LOOMIS *v.* LARAMIE.

1. PERPETUITIES—RESTRAINT OF ALIENATION FOR PERIOD OF YEARS.
   Proposed testamentary trust impounding residual estate for period of 20 years and giving trustees no authority to sell or convey any of the property, consisting of both realty and personalty, is invalid since it restricted and suspended the absolute power of alienation for a period of years in gross in contravention of the statutes on restraint of alienation (2 Comp. Laws 1929, §§ 12934, 12935).

2. WILLS—CONSTRUCTION—INTENT.
   The primary object in the construction of a will is to determine the intention of the testator and this must be drawn from the entire will as the court looks to substance rather than form.

3. SAME—INTENT.
   It is the duty of courts to effectuate the intention of the testator as to the disposition of his property, in so far as it is legally possible.

4. SAME—INTENT—INVALID TRUST PROVISION ELIMINATED AND WILL SUSTAINED.
   In construing will containing invalid trust provision, court should eliminate invalid provision and sustain remainder if in so doing general plan and scheme of testator is not violated and new will made for him.

5. SAME—ELIMINATION OF INVALID TRUST OF RESIDUUM.
   Under a bachelor's will and codicils thereto which evince an intention on his part to give his estate to named persons, all in being, the will may be sustained except for an invalid trust of the residual estate without doing violence to his intent or making a will for him.

Appeal from Wayne; Dingeman (Harry J.), J. Submitted October 18, 1938. (Docket No. 116, Calendar No. 40,149.) Decided December 21, 1938. Rehearing denied February 1, 1939.

Bill by Charles H. Loomis and others against Elmer F. Laramie and others for the construction of a will. From decree rendered, plaintiffs appeal. Affirmed.

*S. Baer Keidan* (*Miller, Canfield, Paddock & Stone,* of counsel), for plaintiffs.

*Schmalzriedt, Frye, Granse & Frye,* for defendants Laramie.

SHARPE, J.   Charles H. Loomis was a lawyer with offices in the city of Detroit. On June 27, 1924, he made a will, paragraph eight of which reads as follows:

"Eighth, I give, devise and bequeath all the rest, residual and remainder of my estate, be it real, personal or mixed, or wheresoever situated to my father, Amos Loomis, of Fairhaven, Vermont and to Harry R. Loomis, my half brother, of Hydeville, Vt. Jointly in trust, and to the survivor of either, and his heirs, for a period of 20 years, after the date of my death for the purposes following; to rent, lease, repair, decorate, invest, build, improve, mortgage and remortgage, pay legitimate claims, bills, mortgages and let contracts pertaining thereto, and do whatsoever requisite and necessary to preserve and increase and keep intact my estate wheresoever situated and at the end of 20 years from the date of my decease, I direct that the whole of my said trust estate be forthwith distributed share and share alike to each of my three half nieces and my three half nephews, sons and daughters of my half brother, Harry R. Loomis, whose names are Ina May, Gerald, Alice, Elsie, Charles, Henry and Clayton Loomis, and their heirs and assigns forever."

On July 19, 1932, Charles H. Loomis executed a codicil to his will, paragraph three of which reads as follows:

"3rd. That when my trust estate has matured and the estate is ready for distribution, that it be divided into eight equal parts, of which Elmer F. Laramie of Detroit shall receive two parts; my half nephew, Charles H. Loomis of Hydeville, Vermont, five parts, and my half nephew, Clayton Loomis, one part, in substitution of the disposition made in paragraph eight, and the heirs of their body forever."

On December 24, 1934, another codicil to the will was executed, paragraph three of which reads as follows:

"3rd. That when my estate has matured and the estate is ready for distribution. It shall be divided in equal parts of which Elmer F. Laramie, of Detroit shall receive two parts; my half nephew, Charles H. Loomis, three parts; my half nephew, Clayton Loomis, one part; my half niece, Ina May Loomis Howland, one part; and Ruth Laramie, one part, in substitution of the disposition made in paragraph three in the first codicil made 19th day of July, 1932, and the heirs of their body forever."

Charles H. Loomis, deceased, was an unmarried man. He died February 14, 1935. The plaintiff Harry Loomis is a half brother of the testator and is also one of the cotrustees of the trust attempted to be created by paragraph eight of the will; Amos Loomis is the father of testator and is also named a trustee of the trust above mentioned; Mary E. Loomis is the wife of Amos Loomis and upon the death of Amos Loomis was substituted as a party plaintiff. Charles H. Loomis and Clayton Loomis are half nephews of the testator. They are named as remaindermen in the third paragraph of the second codicil; Ina May (Mae) Howland is a half niece of testator. She also is named as a remainderman in the second codicil. The defendant Elmer F. Laramie

is not related to the testator, but was a close friend and cared for testator during his last illness. He is named as a remainderman in both codicils; Ruth Laramie is the daughter of Elmer F. Laramie and is one of the remaindermen named in the second codicil. Lucy A. Townsend and Ida Loomis Hinds are related to the testator and are the recipients of specific bequests of money under the will; Emma J. Randall is the daughter of Ida Loomis Hinds.

Subsequent to the death of Charles H. Loomis, his will was duly admitted to probate in Wayne county. The defendant Elmer F. Laramie and the plaintiff Harry Loomis are the duly qualified and acting special administrators of the will with both general and special powers. No executors had been appointed to administer the estate of the testator at the time the present suit was commenced and no trustees had been appointed to administer the trust which testator attempted to create by paragraph eight of the will. The estate consists of both real and personal property. The residue of the estate consists of both real and personal property and the will and codicils made no distinction or division in the disposition of such property.

Plaintiffs filed a bill of complaint seeking to obtain a construction of the will and the two codicils. At the time the cause came on for trial, it was agreed by all interested parties to waive the taking of testimony and submit the case on the pleadings. The trial court found that the trust which the testator attempted to create was invalid because it restricted and suspended the absolute power of alienation for a period of years in gross in contravention of 3 Comp. Laws 1929, §§ 12934, 12935 (Stat. Ann. §§ 26.14, 26.15). The trial court further found that the will and codicils were valid except for the trust and that

the trust could be deleted and the balance of the will sustained as valid.

The trial court correctly held that the trust attempted to be created was invalid. Under the provisions of the proposed trust the property comprising the residue of the estate is impounded for a period of 20 years and the trustees have no authority to sell or convey any of the property. See *Burke* v. *Central Trust Company,* 258 Mich. 588. It is claimed by defendants that if the invalid trust provisions of the will and codicils are eliminated, the remainder of the will and codicils may stand as they fully effectuate the general plan and scheme of deceased; and that to do otherwise would cause property to pass to parties not mentioned as beneficiaries in the will or codicils.

The primary object in the construction of a will is to determine the intention of the testator. *Gregory* v. *Tompkins,* 132 Mich. 205; *Union Trust Co.* v. *Fisher,* 240 Mich. 68; *In re Canfield's Estate,* 248 Mich. 571. This intention must be drawn from the entire will, as the court looks to substance rather than form. *Gardner* v. *City National Bank & Trust Co.,* 267 Mich. 270.

In *Re Richards' Estate,* 283 Mich. 485, we said:

"It is the duty of courts to effectuate the intention of the testator as to the disposition of his property, in so far as it is legally possible."

The scheme or plan of testator as reflected in the will and codicils is as follows:

1. The payment of just debts and funeral expenses;

2. A $200 bequest to Harriette E. Duell, cousin of testator, if she survived him;

3.    To Lucy A. Townsend, a cousin, and Laura A. Gilchrist, or their heirs, $500 divided equally.

4.    To Ida Loomis Hinds, aunt of testator, $200, if she survived testator, and if not, then to her daughter, Emma J. Randall;

5.    Certain personal effects to Charles H. Loomis, a half nephew;

6.    The residue of the testator's estate was to be divided into eight parts, and distributed to the following beneficiaries: Elmer F. Laramie, two-eighths; Charles H. Loomis, three-eighths; Clayton Loomis, one-eighth; Ina May (Mae) Howland, one-eighth; and Ruth Laramie, one-eighth.

The original will of testator was made in 1924 and gave no part of the estate to his father, Amos Loomis, nor to his stepmother, Mary E. Loomis or half brother, Harry Loomis.    The will attempted to provide a trust fund for half nieces and half nephews. If we hold the will void in its entirety, the property would be distributed as intestate property and would descend to Amos Loomis and his heirs; such a condition would defeat testator's whole plan of distribution of his property.

The rule to be followed in cases with facts similar to those in the case at bar is well stated in *Gettins* v. *Grand Rapids Trust Co.,* 249 Mich. 238, where we said:

"We may and should (eliminating the invalid trust provision) sustain the remainder of the will if in doing so we do not violate the general plan and scheme of testatrix, if we do not in effect make a will for her."

In *Palms* v. *Palms,* 68 Mich. 355, 383, we said:

"It seems now to be well established that the general intent of the testator may be sustained by cutting off a void trust, which is separable from other

valid trusts and dispositions, and not an essential part of the general scheme.''

It is contended by plaintiffs that testator expressed no intention as to what should be done with his estate in the event that the trust should be held invalid; and that the invalidity of the trust vitiates in their entirety the provisions dealing with the disposition of the residue; citing *Gardner* v. *City National Bank & Trust Co., supra,* and *In re Richards' Estate, supra,* as authority for such claim. We have closely examined these cases. In the *Gardner Case, supra,* the testator adopted a scheme of distribution much more complicated than is found in the case at bar. There was an income provision for the life tenants and later for the children until they reached the age of 25 when one half of the corpus was to be distributed to them, the remaining one half was to be distributed five years later; the right of the grandchildren was not absolutely vested until they all became 30 years of age. The turning point in the *Gardner Case, supra,* was found in the following language:

'' 'When the several parts of a will are so intermingled or interdependent that the bad cannot be separated from the good, the whole must fail altogether.' *Kalish* v. *Kalish,* 166 N. Y. 368 (59 N E. 917).''

The *Gardner Case* involves the problem of legal and illegal trusts and not an illegal trust and remainder. We there held that the entire devolution of property by trusts must fail where legal and illegal trusts are so inseparably united that if one be retained and the other rejected the scheme fails. The *Richards' Case, supra,* is a splendid example of the court's attempt to carry out the testator's intent ''in so far as it is legally possible.'' The scheme of the

testator was examined and we there determined that the testator did not intend his daughter to get more of the estate than his two sons; the remainder over after the 20-years' trust was to go to grandchildren not all in being at the time of testator's death. The trust provided an income to both sons during their lives. The trust was an integral part of the plan to determine who should take at the end of 20 years and could not be eliminated without defeating testator's major purpose.

In the case at bar the testator's intention was to give his estate to definite named persons, all in being; there are no income provisions nor does testator set up any definite age before any beneficiary may receive his share of the estate. The intention of testator was that certain named persons would get their respective share of the estate. The effect of the trust provisions was to increase the estate and delay for a period of 20 years the right of those who would share in it. In our opinion, the trust provision may be eliminated without doing violence to the intent of the testator, nor does it result in the making of a will for testator.

The decree of the trial court is affirmed. Defendants may have costs.

WIEST, C. J., and BUTZEL, BUSHNELL, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.