It was argued that the "fixed compensation," mentioned in this section, related to compensation paid in violation of the section. We think it obvious that by the use of this phrase the General Assembly intended to make it clear that Section 3808, General Code, did not prevent the official from drawing his salary. The whole intent was that he should not receive anything beyond that from the corporation in any way.

We find no prejudicial error in the judgment and the same is, therefore, affirmed.

*Judgment affirmed.*

Ross, P. J., Hildebrant and Matthews, JJ., concur.

Hite, Exr., et al., Appellees, *v.* Hook, Appellant.

(No. 1989—Decided September 12, 1949.)

*Mr. Walter Dunwoody,* for appellant.
*Messrs. Mitchell & Lindrooth,* for appellees.

McClintock, J. This action originally was filed in the Court of Common Pleas of Licking County, in which David L. Hite, as executor of the estate of C. B. Hook, requested the court to construe the provisions of the will of C. B. Hook, especially item 9 which reads as follows:

"Item 9:—All the rest and residue of my property, both real and personal, I give, devise and bequeath to Dwight M. Warner, in trust however for the following uses and purposes, to wit:

"My said trustee shall invest such proceeds and shall use the income therefrom and such of the principal as may be necessary to adequately provide for my wife, Hattie Hook, all the care that she may need during her lifetime and at her death to provide her with proper burial and monument. He shall use his own discretion as to the proper requirements of my said wife. At her death the balance of moneys and trust properties in his hands shall be *turned over* to my foster son, Henry Cullison, *in absolute ownership.*"

The matter was submitted to the court below on an agreed statement of facts, which is as follows:

"1. It is agreed facts that Hattie Hook, the wife of C. B. Hook, deceased, mentioned in item 9, of his will, predeceased the said C. B. Hook, testator, some three and one-half months.

"2. That the only question involved is the construction of item 9 of the said C. B. Hook's will.

"3. That the legacy mentioned in item 9 consists of practically $13,000, in the nature of a note and mortgage.

"4. That said property is in the hands of David L. Hite, as executor of the estate of C. B. Hook, deceased.

"5. It is a further agreed fact that George Hook is the sole surviving legal heir of C. B. Hook, deceased.

"6. It is further agreed that said will has been duly probated and that David L. Hite has been duly appointed and qualified as executor of said will.

"7. It is further agreed that Henry Cullison is the foster son of C. B. Hook, the testator.

"8. It is further agreed that C. B. Hook had not spoken to or associated with George Hook for many years prior to his death."

After due consideration the court, in consideration of item 9 of the will, decreed:

"That the true intention of the testator expressed by C. B. Hook in his last will and testament, controls the construction of said item, and that it was his intention that any property remaining in the residue of his estate after the same was used for the benefit of his wife, Hattie Hook, during her lifetime should belong absolutely to Henry Cullison, foster son of the testator; that the termination of the preceding estate by the death of Hattie Hook did not cause the lapse of the entire interest set forth in item 9, but that the property referred to therein should be delivered absolutly to Henry Cullison. The court further finds that it would be a useless thing to transfer the assets to Dwight M. Warner, as trustee, as he would immediately have to transfer these assets over to Henry Cullison."

A motion for new trial was overruled. Thereafter George Hook, one of the defendants in the court below, hereinafter called defendant, filed an appeal to this court on questions of law and fact. However, such defendant filed his assignments of error and bill of exceptions, and in fact considered the appeal as one on questions of law only, and this court will so consider it.

For his assignments of error defendant says:

"1. That the judgment of the court is contrary to law.

"2. That the court erred in finding that the termination of the preceding estate by the death of Hattie Hook, did not cause a lapse of the entire interest set forth in item 9 of C. B. Hook's will."

Hattie Hook, who by the will was given a life estate, having died before the testator, C. B. Hook, it is the claim of defendant that this legacy, as set forth in item 9, lapsed and that the assets in the hands of the executor should pass as intestate property to George Hook, the brother of the testator, as his only heir at law.

It is the accepted rule in Ohio that in cases such as the instant one courts ascertain and enforce the intention of the testator, except where forbidden by positive rules of law. Such intention is to be ascertained from a consideration of the will as a whole and not from its fragments. Courts will attempt to find this intention by construing every part of the will with reference to every other part, so that, if possible, effect may be given to every provision.

What was the intention of the testator in this case, as we consider item 9 of the will? It expressly provides for the use of the income and the principal by Hattie Hook, his wife, for all the care that she may need during her lifetime, and that at her death the balance of moneys and trust properties shall be turned over to his foster son, Henry Cullison, "in absolute ownership."

It is to be considered that the testator had recognized his brother, George Hook, and directed that he be paid $1,000 which was left to the testator for life by his father. If it was the intention of the testator that under any circumstances his brother, George Hook, was to receive any further legacy from his estate, he certainly would have said so in his will.

Must this trust fail because the one who was given a life estate died before the testator? It is claimed by defendant that this legacy in item 9 lapsed, inasmuch as the stepson was not a relative of the testator as provided in Section 10504-73, General Code. This section has no application in this case, for the reason that a life estate and a remainder are set forth in the will, and for the further reason that under ordinary circumstances a man makes a will to dispose of his entire estate and, if his will is susceptible of two constructions by one of which the testator disposes of the whole of his estate and by the other he disposes of a part of his estate only and dies intestate as to the remainder, the courts will prefer the construction by which the whole of the testator's estate is disposed of, as this construction is reasonable and consistent with the general scope and provisions of the will.

We find in 4 Page on Wills, 166, Section 1416, the following:

"If a life estate or some other particular estate is given to A with remainder to B and his heirs, the death of A before the death of the testator does not cause the remainder or other estate, dependent on the particular estate, to fail.

"* * *

"A gift to support A for life, and at his death to divide among designated beneficiaries, does not lapse because of A's death before testator."

In support of these propositions, as set forth in 4 Page on Wills, *supra,* we cite the following authorities:

*Elliott* v. *Brintlinger,* 376 Ill., 147, 33 N. E. (2d), 199, in which it is stated:

"2. Same general rule as to when remainder is accelerated. Although the doctrine of acceleration of a remainder applies more commonly where there is a renunciation of the prior estate, it applies where the

preceding estate fails for any reason and there is a presumed intention of the testator that the remainder-man should take upon the happening of any event that prevents, destroys or terminates the prior estate.

"3. Same devise does not lapse where there is a devise over trust. A devise or bequest does not lapse if the will provides a gift over to a second devisee or legatee after the death of the first, and it cannot be contended that because the first gift is in trust a lapse occurs on the death of the beneficiary making the whole gift inoperative because of the failure of the trust, where the intention is plain that the second devisee have the trust property remaining after the death of the beneficiary."

*Thompson* v. *Thornton,* 197 Mass., 273, 83 N. E., 880, which holds:

"Where a fund is left by will to trustees to be used and expended for the comfortable support and maintenance of the testator's son during his life, and after his death to pay the residue, 'if any thereof shall be left,' to certain persons, and the testator's son dies before him, this does not cause the legacy in remainder to lapse, on the ground that the contingency on which it was to take effect never can happen, but on the contrary it becomes operative at once upon the death of the testator, and the estate which passes is not affected by the fact, that had the son lived the trust by its terms could have been so administered as to leave no remainder."

*Jackson* v. *Knapp,* 297 Ill., 213, 130 N. E., 524, in which it was held:

"6. Same when a trust estate does not become intestate property. The rule that where the purpose of a trust fails and no other disposition of the fee is made the trust estate becomes intestate property does not apply where there are two purposes of the trust and

only the first one fails, and in such case the second purpose is accelerated.''

*Ohio National Bank of Columbus, Trustee,* v. *Boone,* 139 Ohio St., 361, 40 N. E. (2d), 149, which holds as follows:

"4. Where a testator wills a part of his estate to another, directing that she shall receive therefrom a stipulated sum annually for and during her natural life and further provides that after her death the unconsumed portion shall be paid to 'my heirs, share and share alike,' the remainder in such portion of the estate as may be unconsumed by the life beneficiary vests at the testator's death in such person or persons as then answer the description of testator's heirs under the statute of descent and distribution in force at such time, unless a contrary design on the part of the testator is plainly apparent.''

In conclusion, it is the opinion of this court that it was the intention of the testator, C. B. Hook, as expressed in his will, that the property remaining in his estate, less the debts properly charged against it and trust property after the death of the testator and his wife, should be turned over to his foster son, Henry Cullison, in absolute ownership, and that the death of the wife of the testator prior to his death did not cause a lapse of such remainder and therefore does not descend as intestate property to his brother, George Hook.

For the reasons herein stated, the judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

Montgomery, P. J., and Putnam, J., concur.