RODWAY, EXR., *v.* ESTATE OF ORGILL ET AL.

(No. 731118—Decided June 6, 1969.)

Common Pleas Court, Probate Division, Cuyahoga County.

*Mr. L. F. Loux* and *Mr. Gordon B. Loux*, for plaintiff.
*Mr. Richard W. Schwartz*, for defendants.

ANDREWS, Chief Referee. This is an action for construction of the will of John H. Orgill, brought by the executor of Mr. Orgill's will. The will was executed on December 20, 1960, and Mr. Orgill died in June 1968, at the age of eighty-nine. His wife had died nearly a year before, and he left no children or other lineal descendants.

Several years prior to his death, Mr. Orgill was adjudged incompetent by reason of mental disability, but there is no dispute about his competency at the time he executed his will.

The main problem involves Item III (k) and (l) of the

will. After a series of pecuniary bequests to various persons in Item III (a) through (j), testator, by Item III (k), bequeaths $50,000.00 to Beatrice Link in trust. Out of the income "and/or principal" of the trust funds, the trustee is to pay to the testator's niece, Lillian O. Hanlon, the sum of $250.00 per month, so long as she may live and there are funds in the trust from which such payments can be made.

It is next provided that if Mrs. Hanlon's husband predeceases her, the distributable balance then remaining in the trust shall thereupon be paid to her in full, and the trust shall terminate.

There follow some paragraphs dealing with the administration of the trust.

Item III (1) provides that in the event of Lillian Hanlon's death prior to the termination of the trust, the funds remaining in the trust, minus expenses and compensation, shall be paid in equal shares, "to the following named persons: my niece, MAY WINSPER GREEN, my nephew, SAMUEL T. WINSPER, and my nephew, THOMAS WINSPER."

Actually, these three persons were, respectively, a half niece and half nephews of the testator, but the inaccurate designation is immaterial.

Plaintiff propounds two "queries" to this court. The gist of "Querry No. 1" is whether the testator intended the $50,000.00 provided for in Item III (k) to pass to the three remaindermen named in Item III (1), even though Mrs. Hanlon predeceased the testator; or whether, in such an event, his intent was that Item III (k) and (1) should be completely nullified, and that the $50,000.00 should therefore be treated as part of the general residue. In other words, was the gift to the remaindermen conditioned upon Mrs. Hanlon's surviving the testator?

It is axiomatic that the testator's intent must be determined from the will itself, plus any competent evidence of surrounding circumstances. And except in the case of a so-called "equivocation," which is not present here, the court has no right to consider statements by witnesses or others as to what the testator intended.

Courts have been faced many times with the situation

where a life tenant, including the life beneficiary of a trust, predeceases the testator. From the decisions, a very clear rule has emerged, which is well stated in 133 A. L. R. 1367, at 1368:

"* * * in the event of the death of the tenant for life before the death of the testator, the remainder interest which succeeds the particular estate is not thereby defeated, but takes effect upon the testator's death as if no such prior interest had been limited in the will, and in this sense is 'accelerated,' unless the testator has manifested an intention to the contrary."

See, also, 2 Restatement, Property, Sec. 230, especially comment *d*. I will cite only a few of the many cases studied. See, for example, *Hite, Exr.,* v. *Hook* (1949), 87 Ohio App. 493; *Elliott* v. *Brintlinger* (1941), 376 Ill. 147, 33 N. E. 2d 199; *In re Farley's Will* (Surr. Ct. 1951), 105 N. Y. S. 2d 732; *In re Hayward's Estate* (1952), 117 Vt. 313, 91 A. 2d 559.

The doctrine is based upon the presumed intention of the testator that the remaindermen should take upon the happening of any event that prevents, destroys, or terminates the prior estate. *E. g. Elliott* v. *Brintlinger, supra.*

Even though the language of the will, like that in Mr. Orgill's will, contemplates the survival of the life beneficiary and provides for the creation and administration of a trust, this is not, of itself, enough to make the life beneficiary's survival a *condition* upon which the bequest to the remaindermen depends; or, expressed in another way, it is not enough to constitute the manifestation of an intent to nullify the bequests to the remaindermen. See 2 Restatement, Property, Section 230, Comment *g*; *e. g. In re Knochel's Will* (Surr. Ct. 1956), 155 N. Y. S. 2d 630; *In re Estate of Kennedy* (Surr. Ct. 1961), 214 N. Y. S. 2d 793; *In re Howe's Estate* (Mo. App. 1964), 379 S. W. 2d 154 (specific terms necessary to nullify).

The rule is likewise not affected by the fact that the trustee is authorized to invade the principal, as she was under Mr. Orgill's will. *E. g. Hite, Exr.,* v. *Hook, supra*; *Jackson* v. *Exchange Nat. Bank of Tampa* (1943), 152 Fla.

528, 12 So. 2d 450; *Thompson* v. *Thornton* (1908), 197 Mass. 273, 83 N. E. 880 (rule not affected by fact there might have been no remainder left).

It follows logically that the rule is not affected by the fact that under the terms of the will the life beneficiary would have been entitled to the corpus under certain conditions, as she would have been under Mr. Orgill's will. *In re Knochel's Will* (Surr. Ct. 1956), 155 N. Y. S. 2d 630; *In re March's Estate* (1947), 357 Pa. 216, 53 A. 2d 606; *Nelson* v. *Meade* (1930), 129 Me. 61, 149 Atl. 626; see 133 A. L. R. 1367 at 1374.

Perhaps, as suggested, the testator hoped and expected that Mrs. Hanlon would live to take the corpus. She apparently enjoyed a close relationship with the testator and his wife, and in the normal course of events would have outlived him. Instead, she died while less than fifty years old. But under the principles of law discussed above, there is nothing in the will or the conceded facts manifesting an intention that the bequests to the remaindermen should fail if Mrs. Hanlon predeceased the testator.

The suggestion, which is part of query No. 1, that the provisions for the "residual" parties might be intended merely "to constitute a simple formula to make possible a closing of the trust in the event same became operative," is untenable and at odds with the language of the will and the principles of law enunciated. Item III (1) states clearly that if Lillian Hanlon dies before the termination of the trust, the funds remaining in the trust "*shall be paid*, in equal shares" to the designated persons. (Emphasis added.) A more clear-cut remainder is hard to imagine. If the testator did not wish to make a gift over to designated remaindermen, he could have stipulated that upon the death of Lillian Hanlon prior to the termination of the trust, the funds remaining in the trust should become a part of the residue, under Item V.

It has been noted that the testator was mentally incomcompetent during his last few years, and lacked the capacity to change his will, assuming that he would have wished to do so. Although this is unfortunate, no authority has

been cited to us, nor do we know of any, holding that a will is revoked by the subsequent incompetency of the testator.

My answer to query No. 1 is, then, that although the life tenant of the so-called "Hanlon Trust" predeceased the testator, the bequests to the remaindermen, set forth in Item III (1) are not invalidated, and take effect as if there had been no such prior life estate provided for in the will.

Of the three remaindermen named in Item III (1) as the beneficiaries of the "Hanlon Trust," only Thomas Winsper is alive. May Winsper Green and Samuel T. Winsper predeceased the testator. Plaintiff does not ask me to instruct him in the exact distribution of the $50,000.00 fund in question, and it would be presumptuous of me to do so except that some minor grandchildren of Samuel T. Winsper are parties, and their guardian ad litem submits their interests to the protection of the court.

Item III (1) directs that the funds remaining in the trust, after payment of expenses and compensation connected with the operation of the trust, shall be paid in equal shares to the three named parties. Inasmuch as no trust will be set up, presumably there will be no expenses in connection with it, and the full $50,000.00 will be available for distribution. In any event, I will refer to this as the "fund," in case there are to be any deductions or increment before distribution.

Item IV of the will provides that in the event of the death of any beneficiary, the amount which would have been distributed to him or her "shall be paid and distributed to the surviving issue of his or her body."

Apparently it is conceded that the above language refers to the lineal descendants who would inherit under the statutes of descent and distribution in the proportions set forth in those statutes. See 3 Restatement, Property, Section 292, and Comment *b* thereof; 56 Ohio Jurisprudence 2d, Wills, Section 620; *Watson* v. *Watson* (1929), 34 Ohio App. 311; *Parrett* v. *Paul* (1962), 115 Ohio App. 488 ("relations"); 21 Md. L. Rev. 242 (1961).

Obviously, Thomas Winsper is entitled to one third of

the fund. May Winsper Green left one adult child, Mrs. Martha Fox, who is entitled to one third of the fund.

Samuel T. Winsper left two surviving adult children, Mrs. Edith Triska and Lorell D. Winsper. Two other adult children, Roy Winsper and Edward S. Winsper, predeceased him. Roy left three children, Sara, David, and Edward, all minors. Edward S. Winsper left two children, Phillip, an adult, and Barbara, a minor.

Under Section 2105.13, Revised Code, Edith Triska is entitled to one fourth of Samuel T. Winsper's one-third share of the fund. That means that Edith Triska is entitled to one twelfth of the total fund. By the same token, Lorell D. Winsper is entitled to one twelfth of the fund.

Roy and Edward S. Winsper would each be entitled to one twelfth of the fund had they lived. By the terms of the statute, Roy's three children Sara, David and Edward, divide their father's share equally. Hence, each of the three is entitled to one thirty-sixth of the fund.

By the same method of computation, each of Edward S. Winsper's two children, Barbara and Phillip, is entitled to one twenty-fourth of the fund.

Inasmuch as the prior death of Lillian Hanlon prevents the trust from coming into existence, distribution should be made by the executor directly to the beneficiaries. See *Hite, Exr.,* v. *Hook* (1949), 87 Ohio App. 493; 2 Restatement, Property, Section 230 and Comment *d* thereof.

Query No. 2 in plaintiff's petition relates to Item V of the will:

"Any balance remaining in my estate, after payment of all items set forth in ITEMS I and III of this my will, shall be distributed on a pro rata basis among the beneficiaries named in ITEM III, sub-items "(a)" to "(1)," inclusive, of this my last will and testament."

Counsel for the executor informs us that there will be a "balance remaining" or residue, although the amount is not yet known.

Paragraph (a) of query No. 2 asks whether the "trust" mentioned in Item III, subitem (k), is to be con-

sidered for any purpose in determining the distribution of the residue.

Although, as we have seen, the trust as such is ineffective, the $50,000.00 originally slated for the trust fund has become a present gift under Item III (1), as modified by Item IV of the will. Hence, the beneficiaries of this fund are entitled not only to their respective shares of the fund, but also to their pro rata share of the residue or "balance remaining," as it is designated in Item V.

Query No. 2 also asks whether in determining the "interests" due the legatees from the Item V residue, the fiduciary should use a basis of one forty-third or one thirty-third.

The answer is one forty-third. This is because of my holding that the $50,000.00 bequeathed by Item III (k) and (1) is effective as a present gift to the remaindermen. In the first of two carefully prepared tables, showing the legatees, the amount of each legacy, and the pro rata share of each legacy in the Item V residue, counsel for the plaintiff, in the interest of simplicity, lists the above legacy as "Hanlon Trust," and correctly computes its share of the residue as ten forty-thirds.

Thus, an amount equal to ten forty-thirds of the residue under Item V should be distributed to the same persons and in the same proportions as the distribution of the $50,000.00 fund, already set forth in detail.

### Conclusions of Law

1. Although Lillian O. Hanlon predeceased the testator, thus eliminating the provision in Item III (k) of the will for a $50,000.00 trust, the interests of the remaindermen, set forth in Item III (1), are not invalidated, but take effect as present bequests, as if no such prior life estate had been provided for.

2. Distribution of the above fund shall be made by the executor to the following persons (or, where proper, to their guardians), and in the following proportions:

Thomas Winsper, one third
Mrs. Martha Fox, one third
Mrs. Edith Triska, one twelfth

Lorell D. Winsper, one twelfth
Sara Winsper, a minor, one thirty-sixth
David Winsper, a minor, one thirty-sixth
Edward Winsper, a minor, one thirty-sixth
Barbara Winsper, a minor, one twenty-fourth
Phillip Winsper, one twenty-fourth

3. An amount equal to ten forty-thirds of the residue under Item V of the will, shall be distributed to the same persons and in the same proportions as the distribution made under Conclusion of Law No. 2.

*Judgment accordingly.*