# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-01346-SCT

*IN THE MATTER OF THE ESTATE OF MARY
ELIZABETH HOMBURG, DECEASED:
MISSISSIPPI STATE UNIVERSITY
FOUNDATION, INC.*

*v.*

*RUTHELLA CLARK AND LYDIA QUARLES, CO-
EXECUTORS*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/14/95 |
| TRIAL JUDGE: | HON. DOROTHY WINSTON COLOM |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JAMES K. DOSSETT, JR. |
| ATTORNEYS FOR APPELLEES: | DOLTON W. MCALPIN |
| | CHRISTINE A. ARIANS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 7/17/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/7/97 |

**BEFORE DAN LEE, C.J., PITTMAN AND ROBERTS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This case comes before this Court on appeal from a Declaratory Judgment entered in the Chancery Court of Lowndes County filed November 14, 1995. This Judgment was entered in response to a petition filed on March 23, 1995, by Lydia Quarles and Ruthella Clark, Co-Executors of Mary E. Homburg's estate in order to determine the proper distribution of the bequests of her will. The issue on appeal is the legal effect of a provision in Ms. Homburg's will. The provision bequeathed $100,000 to a testamentary trust for the benefit of Albert Corder during his life, with the

remainder to Mississippi State University (Foundation) and Mandy Spraggins, in equal shares. Memoranda of Law were filed by both the Co-Executors and the Foundation. After hearing oral arguments, the chancellor made findings of fact and conclusions of law. The chancellor refused to give effect to the provision in the Will finding that the gift in trust to Corder had lapsed and would devolve to the residue.

¶2. The Foundation, a remainder beneficiary of the testamentary trust held invalid, duly perfected this appeal. The Court is asked to reverse the decision of the chancellor and render a judgement in the Foundation's favor by directing the Co-Executors to comply with the provisions in the Will. This would require the distribution of one half of the remainder of the funds bequeathed under Item IV of the Will to the Foundation and Spraggins, which is $50,000 respectively.

## STATEMENT OF THE FACTS

¶3. Before her death on September 30, 1994, Ms. Homburg resided in Lowndes County, Mississippi. She died testate with a will dated March 31, 1989. Ms. Homburg had a half-sister as her primary heir-at-law. The Will made several specific bequests, leaving $100,000 in trust to Corder, a former servant, and left the residue of the estate to be divided among two named individuals and a named charitable institution, Auburn University. A Petition for Probate of Will was filed in the Lowndes County Chancery Court on November 8, 1994, by the Co-Executors. Also on November 8, 1994, the Will was admitted to probate, and the Co-Executors received the letters testamentary after taking the appropriate oaths.

¶4. On March 23, 1995, the Co-Executors filed with the court a Petition for Declaratory Judgment. The Petition was filed in order to seek the court's guidance because a number of beneficiaries had pre-deceased the testatrix and the need to interpret some of the language in the Will. The Co-Executors requested a Declaratory Judgment as to the legal and proper distribution of the bequests in the Will. The Petition provided, in part, the following:

> 3. Due to the advanced age of the deceased at her death, there are several lapsed legacies in her will. Additionally, a number of these lapsed gifts were shared jointly under the Will with other legatees. Therefore, the Executors would request that the Court rule on the proper and legal recipients of the shared lapsed gifts.

¶5. The only issue on this appeal arises from the lower court's ruling as to the effect of Item IV of Ms. Homburg's will. That item provides as follows:

### ITEM IV.

I devise One Hundred Thousand Dollars ($100,000) to Robert C. Clark, Ruth Clark, and W.C. Thomas, in trust, for Albert Corder. Should one or more of the individuals so named as co-trustees become unwilling or unable to serve as a co-trustee of this trust for Albert Corder, then it is my desire that the remaining co-trustees or trustee serve alone. It is my desire that so long as Albert Corder is able to live independently or with the aid of his family (outside of institutional care), he be paid over $1,000.00 a month from the interest and the corpus by my trustees. In addition thereto, I grant my co-trustees broad discretion to pay over to Albert

Corder, from interest or corpus, any sums they believe reasonable to make his life more comfortable. Should Albert Corder find it necessary to place himself in full time nursing care, then I direct that my trustees to undertake to provide him such care as he may need, and to invade corpus to the extent necessary to provide him with medical treatment that may be meaningful to him. Upon the death of Albert Corder, this trust shall cease to exist and I hereby direct my trustees to pay over one- half of any remaining corpus and interest to the daughter of Albert L. Corder, namely Mandy, and the remaining one-half to the Mississippi State University School of Veterinary Medicine, to be utilized by the school to establish an endowment in my name for the provision of medical services to stray domesticated animals and an adoption program upon the animal's rehabilitation by the school.

¶6. Corder died before Ms. Homburg. In their Memorandum of Law the Co-Executors took the stance that the gift to the trust lapsed because Corder did not survive Ms. Homburg. The Co-Executors maintained this position even though two of the three named recipients of a beneficial interest in the $100,000 bequest, the Foundation and Mary Spraggins, were in existence at the time of death of Ms. Homburg. Two of the three named recipients of legal title to the trust property, the trustees, were also living at the time of Ms. Homburg's death.

¶7. The Co-Executors stated in their Memorandum of Law that because this was a lapsed legacy to non-descendants the trust property should pass to the residuary beneficiaries. The surviving residuary beneficiaries under the Will are Susan Hancock Ware ( residuary beneficiary), Auburn University (¼ residuary beneficiary), and Mildred Serdahely, the decedent's half sister ( residuary beneficiary).

¶8. The lower court entered the Declaratory Judgment on November, 14, 1995. The Foundation states the chancellor adopted the position of the Co-Executors by ruling as follows:

7. The testamentary trust to Albert Corder failed because the beneficiary predeceased the Testator [sic]. There is no properly manifested intention in the Will, as required by the Restatement of Trusts, to prevent a resulting trust for the benefit of the residuary legatees under the Will from arising. That is, there is no indication of intent on the part of the Testator [sic] that if the trust fails at the outset, the disposition should be to Mandy Spraggins and Mississippi State, instead of to the residue of her estate. . . . The trust was a specific gift to Albert Corder which has lapsed and shall devolve into the residue.

¶9. The Foundation states the lower court's ruling and entire analysis with respect to the legal effect of Item IV of the Will appears to be based on the identical misapprehension of the contents of the Restatement (Second) of Trusts presented in the Co-Executor's Memorandum of Law. Thereby aggrieved of the chancellor's legal conclusion, the Foundation perfected its appeal to this Court alleging the following assignment of error:

**I. WHETHER THE DEATH OF THE INTENDED LIFETIME BENEFICIARY OF A TESTAMENTARY TRUST, PRIOR TO THE DEATH OF THE TESTATRIX, DEFEATS THE SPECIFIC BEQUEST OF THE REMAINDER INTEREST IN THE TRUST ASSETS TO NAMED, EXISTING REMAINDER BENEFICIARIES.**

¶10. This Court has a clear standard of review in an appeal where there are legal question from a will contest.

Typically this Court will not disturb a chancellor's findings of fact unless the chancellor was manifestly wrong and not supported by substantial, credible evidence. *Smith By Young v. Estate of King*, 579 So. 2d 1250, 1251 (Miss.1991); *Bell v. Parker*, 563 So. 2d 594, 596-597 (Miss.1990). This rule does not apply to questions of law. When presented with a question of law, the manifest error/substantial evidence rule has no application and we conduct a de novo review. *Cooper v. Crabb*, 587 So. 2d 236, 239 (Miss.1991); *Holliman v. Charles L. Cherry & Associates*, 569 So. 2d 1139, 1147 (Miss.1990); *Planters Bank & Trust Co. v. Sklar*, 555 So .2d 1024, 1028 (Miss.1990). Notwithstanding our respect for and deference to the trial judge, on matters of law it is our job to get it right. That the trial judge may have come close is not good enough. *Cooper*, 587 So. 2d at 239, *quoting* *UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc.*, 525 So. 2d 746, 754 (Miss.1987).

*Estate of Mason v. Fort*, 616 So. 2d 322, 327-28 (Miss. 1993).

¶11. This Court must determine if effect was given to the testat[rix]'s intent when reviewing the decision of the chancellor. *Tinnin v. First Bank of Mississippi*, 502 So. 2d 659, 663 (Miss. 1987). "For purposes of testamentary construction, it is the responsibility of a reviewing court to determine and respect the intent of a testat[rix]. Where a will is susceptible to more than one construction, it is the duty of the court to adopt that construction which is most consistent with the intent of the testat[rix]." *Estate of Williams v. Junius Ward Johnson*, 672 So. 2d 1173, 1175 (Miss. 1996) (internal citations omitted). This Court has previously held "[t]he surest guide to testamentary intent is the wording employed by the maker of the will. . .[there is] authority to give effect to a testator's intent only where that intent has received some form of expression in the will." *Tinnin*, 502 So. 2d at 663. In determining the testat[rix]'s intent, the Court is limited to the four corners of the Will. *Estate of Blount v. Papps*, 611 So. 2d 862, 866 (Miss. 1993). The four cardinal rules of construction are:

First, the prime inquiry is the intention of the testatrix . . .

*Second, the law favors the vesting of the estates at the earliest possible moment. . .*

*Third, in the absence of a clear intent to the contrary, that construction should be adopted which will result in a just and reasonable disposition of the property. . .*

Fourth, life tenancies are not favored.

*Id. quoting* *In Raworth's Estate*, 52 So. 2d 661, 662-63 (Miss. 1951) (emphasis added). "In appropriate cases [this Court] may order modification or excision of testamentary terms incapable of performance or enforcement for whatever reason." *Tinnin*, 502 So. 2d at 664.

¶12. The Will provided for a testamentary trust to benefit Corder for life, and upon his death the trust was to terminate with the remainder going to the Foundation and Spraggins. Corder predeceased Ms. Homburg such that at the time of the testatrix's death there was no life beneficiary of the trust. The arguments presented by both sides are concise.

¶13. The Foundation argues that the only lapsed gift was that to Corder. Because the Foundation and Spraggins were both named specifically and were capable of taking at the time of the testatrix's death, they should have their remainders accelerated and receive the $100,000. As stated above, one of the

questions of construction favors the vesting of estates at the earliest possible moment. ***Estate of Blount v. Papps***, 611 So. 2d at 866. Also, charitable trusts are favored and should be enforced where possible. ***Tinnin***, 502 So. 2d at 670.

¶14. The Co-Executors argue that the gift to Corder lapsed, and because the trust never came into existence, there can be no remainder of the trust. The language of the Will stipulates that the trust is to cease to exist upon the death of Corder. Because neither of the remainders under Item IV of the Will, namely the Foundation and Spraggins, the gifts to them were not saved by Miss. Code Ann. § 91-5-7[(1)], which is commonly referred to as the "anti-lapse" statute. The rule as to lapsed devises is applicable primarily to instances where the devisee named in the will has died prior to the death of the testat[rix]. ***Hayes v. Cole***, 73 So. 2d 258, 263 (Miss. 1954). Therefore, the $100,000 should be distributed through the residuary clause in the Will.

¶15. The case before this Court on appeal is a matter of first impression in the state of Mississippi. Therefore, the Court must look to other jurisdictions for authoritative guidance.

> It is a well-settled general principle that in the event of the death of a life tenant before that of the testat[rix] whose Will sets up the life estate, the remainder interest succeeding the life estate is not thereby defeated, but takes effect upon the testat[rix]'s death as if no such prior interest had been limited in the Will, and in this sense, is "accelerated," unless the testat[rix] has manifested an intention to the contrary. In other words, where a life tenant dies before the testat[rix], and the party entitled in remainder survives him, the death of the life tenant only extinguishes the life estate, and the remainderman is let in to the immediate right to the gift the moment the will takes effect. . . . [The rule] has also been applied where the gift to the life tenant was in trust.

28 Am. Jur. 2d, Estates § 308 (footnotes omitted).

¶16. A case addressing the same issue as in the case sub judice is ***Haskins v. Garrett***, 820 P.2d 350 (Colo. 1991). The will in that case provided for proceeds of the trust to be paid to the decedent's brother until his death, and if he died without issue, to another named beneficiary. The personal representative of an estate argued the proceeds from a trust constituted a part of the residuary of the estate because the decedent's brother predeceased the decedent. The court stated "according to most authorities, if the life beneficiary of trust predeceases the author of the will, the remainder beneficiary takes as if the provision for the life estate was not made." ***Id.*** at 351; ***Rodway v. Estate of Orgill***, 248 N.E.2d 241 (Ohio 1969); Restatement of Property § 230 (1936); Restatement of Trusts (Second) § 412 (1959).

¶17. In ***Rodway***, the court stated where there are situations where a life tenant, including the life beneficiary of a trust, predeceases the testat[rix], a very clear rule has emerged, which is well stated in 133 A.L.R. 1367, at 1368:

> . . .[I]n the event of the death of the tenant for life before the death of the testator, the remainder interest which succeeds the particular estate is not thereby defeated, but takes effect upon the testator's death as if no such prior interest had been limited in the will, and in this sense is accelerated, unless the testator has manifested an intention to the contrary.

The doctrine is based upon the presumed intention of the testat[rix] that the remainderman should take upon the happening of any event that prevents, destroys, or terminates the prior estate. *Rodway*, 248 N.E.2d at 242; *Elliot v. Brintlinger*, 33 N.E.2d 199 (Ill.1941).

¶18. The Co-Executors state that because Corder, the life beneficiary, predeceased the testatrix the trust fails on its own terms. The trust was to cease at the death of Corder and any remainder to be paid to the Foundation and Spraggins. The court in *Rodway* dealt with this precise point stating "[i]nasmuch as the prior death of [life beneficiary] prevents the trust from coming into existence, distribution should be made by the executor directly to the beneficiaries." *Rodway*, 248 N.E.2d at 244.

¶19. The gift to Corder, as life income beneficiary of the trust, lapsed when he predeceased Ms. Homburg, the testatrix. However, the gift over to the remaindermen did not lapse.

> Where a legatee predeceases the testatrix, the legacy to the legatee lapses. But where there are other interests limited on that of the deceased legatee and the persons entitled in remainder survive, the death of the life tenant only extinguishes the life estate and the remaindermen are entitled to the immediate right to the gift as soon as the will takes effect.

*In re Hayward's Estate*, 91 A.2d 559, 561 (Vt. 1952) (internal citations omitted). The court went on to hold that the legacy to the life beneficiary gift lapsed because of the beneficiary's death prior to the testatrix. However, the remaindermen were entitled to receive the legacy provided for them, and the proceeds were not a part of the residuary of the estate. *Id.*

¶20. In New Jersey the court "acknowledged that where there is a testamentary gift of a life estate and a gift of the remainder after the termination of the life estate, the gift in remainder will be deemed vested immediately in the absence of some controlling equity or some evidence in the will from which a different intent is implied." *Simpkins v. Simpkins*, 24 A.2d 821, 823 (N.J.Eq. 1942). Likewise, the Supreme Court of Utah held "that a will creating a testamentary trust, which provides for a life estate followed by a remainder payable upon the death of the life tenant, may be accelerated upon the release and termination of the precedent life estate if consistent with the terms of the will and not contrary to the intent of the testat[rix]." *Auerbach v. Samuels*, 342 P.2d 879, 883 (Utah 1959).

¶21. This rule is well stated in 96 C.J.S. Wills S 1051, p. 682:

> Where it is in accordance with the testat[rix]'s intention, remainders following invalid trust provisions may be accelerated, but remainders will not be accelerated where to do so would violate the intention of the testat[rix]. If a remainder following a void provision of a testamentary trust is indefeasibly vested, it may be accelerated and the specified remainderman will take on deletion of the void provision, but if the remainder is not so vested, or where it is contingent or uncertain, it cannot be accelerated and will pass as intestate property or fall into the residuary.

*Estate of McNeill*, 41 Cal. Rptr. 139, 142 (Cal. Dist. Ct. App. 1964). *See Wachovia Bank & Trust Co. v. McEwen*, 84 S.E.2d 642 (N.C. 1954); *Walter v. Thielke*, 13 A.2d 649 (N.J.Eq. 1940); *Loomis v. Laramie*, 282 N.W. 876 (Mich. 1938); *In re Mill's Estate*, 111 N.Y.S.2d 622 (Surr.1952); *Sipe v. Merchants Trust Co.*, 34 N.E.2d 968 (Ind.App. 1941).

¶22. The doctrine of acceleration is explained in *Elliot*, where the court stated if the life estate fails for any reason the remainder is accelerated. *Elliot*, 33 N.E.2d at 201.

> The doctrine is based upon the presumed intention of the testat[rix] that the remainderman should take upon the happening of any event that prevents, destroys or terminates the prior estate.

* * *

> Although the doctrine of acceleration applies more commonly where there is a renunciation of the prior estate, it also applies where the preceding estate fails for any reason. . . .[The life beneficiary] having died before the will took effect, so that the devise and the trust for his benefit failed, the remainder was accelerated and took effect at once.

*Id.* (internal citations omitted).

¶23. This Court has embraced the doctrine of acceleration in its case law previously. "The rule is well established that a renunciation by the widow of a life estate bequeathed her is equivalent to its termination by her death so far as the vesting in possession of the remainder is concerned, unless a contrary intention of the testator is manifest in the will. We recognize the rule of acceleration. *Rose v. Rose*, 88 So. 513, 514 (Miss. 1921). "When a devise or bequest is followed by a limitation over on the death of the devisee or legatee, the refusal of the devisee or legatee, to accept it is the equivalent of his death, and the limitation over becomes then effective, unless it is manifest from the provisions of the will that the testat[rix] intended otherwise." *Greely et al. v. Houston et al.*, 114 So. 740, 742 (Miss. 1927).

¶24. In *Cooper v. Simmons*, 116 So. 2d 215 (Miss. 1960), this Court encountered a situation where the testatrix devised a life estate in her property to her sister. The life estate included a lifetime power to dispose of the property. The children of a brother received the remainder interest following the aforementioned life estate. The life tenant predeceased the testatrix. This Court held that the entire estate passed to the remaindermen, and in so doing stated:

> The primary gift may lapse or fail if its object dies before the will can operate at all, but such lapse or failure has no tendency to defeat an independent and ulterior limitation to other objects who are living at the testat[rix]'s death. In such cases the question is not one of lapse, but of interpretation and intention. The mere lapse of intervening estates will never be allowed to defeat the remainder over unless these estates are coupled with conditions on which the subsequent limitations are in some way made to depend. Thus, under a devise and bequest to the testat[rix]'s son of real and personal property for life, and to his heirs in case he dies leaving issue, or if he dies without issue to the testat[rix]'s nephews and nieces, if the son should die without issue before the testat[rix], there would be no lapse, but the contingent limitation would take effect in favor of the nephews and nieces.

*Cooper*, 116 So. 2d at 219; *quoting* 19 Am. Jur. 2d Estates § 130.

¶25. The chancellor ruled that the trust to Corder had lapsed and the gift over to the remaindermen failed as well. She stated in her Order there was no properly manifested intention in the Will, as

required by the Restatement of Trusts, to prevent a resulting trust for the benefit of the residuary legatees under the will from arising. In other words, the chancellor could not find specific intent on the part of the testatrix that if the trust failed the disposition should be to the Foundation and Spraggins.

¶26. While the chancellor did not cite to a specific section in the Restatement of Trusts, the appellant and appellee both cite to Restatement (Second) of Trusts §§ 411[(2)], 412[(3)] to support their respective theories on appeal. The Foundation agrees that a resulting trust should arise where there is no named beneficiary and the original testamentary trust fails. "The rule stated. . .is applicable where the intended trust fails because no beneficiary is named; because the intended beneficiary is nonexistent; because the intended beneficiary is not properly designated; because the intended beneficiary is incapable of taking the beneficial interest; because the intended beneficiary disclaims; because the intended trust is invalid on the ground of remoteness." Restatement (Second) of Trusts § 411 cmt. g (1959).

¶27. In the case sub judice the Foundation and Spraggins were named, in existence, properly designated, capable of taking (both were fully vested), neither disclaimed their respective interests, and the trust was not invalid on grounds of remoteness. By the very comment that enumerates to which situations § 411 applies, it is apparent that § 411 did not apply to the facts in this case.

¶28. This Court finds that Restatement (Second) of Trusts § 412 is applicable. The comment to § 412 speaks of accelerating the future interest.

> If the owner of property transfers it in trust for two or more persons in succession, and the prior interest fails, no resulting trust arises if the future interest is accelerated. Thus, if a testat[rix] bequeaths property in trust to pay income to a designated person for life and on his death to pay the principal to a designated person, and if the life beneficiary disclaims, the principal ordinarily becomes payable to the beneficiary in remainder.

Restatement (Second) of Trusts § 412 cmt. c. (1959).

¶29. The testatrix clearly manifested her intent as to how she wanted the $100,000 gift to be handled. It was to be held in trust for Corder for his support and comfort for his life. Upon his death, the remainder was to go to the Foundation and Spraggins. Corder predeceased the testatrix; yet, no other provision was made as to how the $100,000 was to be distributed other than that originally designated in the Will. It is clear from reading the entire provision in Item IV of the Will, the intent of Ms. Homburg was for the Foundation and Spraggins to have whatever was left of the $100,000 at the death of Corder.

¶30. Today we adopt the doctrine of acceleration as it is applies to remainders following failed life beneficiary gifts of testamentary trusts where the intended life beneficiary denounces the gift or predeceases the testatrix. Therefore, this decision is reversed and remanded for further proceedings not inconsistent with the findings of this Court.

## CONCLUSION

¶31. The caselaw from other jurisdictions, the Restatement (Second) of Trusts, and other authorities

are clear. Equity requires that the remainder should be accelerated where the life beneficiary of a testamentary trust disclaims or predeceases the testatrix, unless there is a clear intent manifested otherwise. The Will did not provide for disposition of the $100,000 in the event Corder predeceased the testatrix. However, it was clear and unambiguous with explicit language as to where the money was to go upon the death of Corder. This Court holds that the true intent of the testatrix was for the money to be received by the remaindermen at the death of Corder. This Court adopts the rule of acceleration of future interests as it applies to remainders following failed life beneficiary gifts of testamentary trusts where the intended life beneficiary denounces the gift or predeceases the testatrix. By specifically adopting this doctrine as law in Mississippi, this Court reverses the decision of the chancellor. This case is reversed and remanded with instructions directing the Co-Executors to pay the appellants their respective interests from the Will, along with any applicable interest that has accumulated since the denial of payment by the Co-Executors.

¶32. **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, SMITH AND MILLS, JJ., CONCUR.**

1. Whenever any estate of any kind shall or may be devised or bequeathed by the last will and testament of any testator or testatrix to any person being a child or descendant of such testator or testatrix, and such devisee or legatee shall, during the lifetime of such testator or testatrix, die testate or intestate, leaving a child or children, or one or more descendants of a child or children, who shall survive such testator or testatrix, in that case, such devise or legacy to such person so situated as above mentioned, and dying in the lifetime of the testator or testatrix, shall not lapse, but the estate so devised or bequeathed shall vest in such child or children, descendant or descendants, of such devisee or legatee in the same manner as if a legatee or devisee had survived the testator or testatrix and had died intestate.

2. § 411 provides:

> Where the owner of property gratuitously transfers it and properly manifests an intention that the transferee should hold the property in trust but the trust fails, the transferee holds the trust estate upon a resulting trust for the transferor or his estate, unless the transferor properly manifested an intention that no resulting trust should arise or the intended trust fails for illegality.

3. § 412 provides:

> Where the owner of property transfers it upon a trust which fails, the transferee does not hold the trust estate upon a resulting trust if the transferor properly manifested an intention that no resulting trust should arise upon the failure of the trust.